Argued and submitted November 8, 1979, reversed and
remanded April 14, reconsideration denied May 22,
petition for review denied September 3, 1980

HUSTON,
*Appellant,*
*v.*
TRANS-MARK SERVICES, INC., et al,
*Defendants,*
*and*
POLLARD,
*Respondent.*

(No. A7704-04682, CA 13923)

609 P2d 848

Argued and submitted November 8, 1979.

Gerald R. Pullen, Portland, argued the cause and filed the brief for appellant.

Douglas M. Ragen, Portland, argued the cause for respondent. With him on the brief was Miller, Anderson, Nash, Yerke & Wiener, Portland.

Before Schwab, Chief Judge, and Richardson and Joseph,* Judges.

JOSEPH, J.

---

*Joseph, J., *vice* Lee, J., deceased.

## JOSEPH, J.

This is an action for intentional interference with contractual relations. Plaintiff was employed by Trans-Mark Services, Inc. and Kansas City Southern Railway Company[1] (KCS), as sales manager in the Portland office. Defendant Pollard (defendant) was employed by KCS as a regional vice president. Plaintiff alleged that defendant Pollard intentionally and wrongfully interferred with his employment contract and caused him to be fired.

The jury returned a verdict against defendant, awarding $100,000 as general damages and $1,000 as punitive damages, and judgment was entered on the verdict. Defendant filed alternative motions for judgment notwithstanding the verdict and for a new trial. The trial court granted defendant's motions and entered judgment in favor of defendant.[2] Plaintiff assigns as error the rulings on these motions.

---

[1] Defendant Trans-Mark Services, Inc., is the sales organization of Kansas City Southern Railway Company. Trans-Mark was the actual employer of both plaintiff and defendant Pollard at the time plaintiff was dismissed. Plaintiff's contract of employment was terminable at will by either party.

KCS's and Trans-Mark's demurrers were sustained in the pleading stage on the grounds that a party to a contract cannot tortiously interfere with its own contract. The complaints against them were dismissed, and the case went to trial solely against defendant Pollard.

[2] The trial court granted defendant's motions for judgment n.o.v. and for new trial pursuant to former ORS 18.140(1) and(3), respectively.

ORS 18.140(1):

"When it appears from the pleadings that the court has not jurisdiction of the subject of the action or the person of the defendant, or that the facts stated in the pleadings of the plaintiff or defendant, as the case may be, do not constitute a cause of action or defense thereto, or when a motion for a directed verdict which should have been granted has been refused and a verdict is rendered against the applicant, the court may, on motion, render a judgment notwithstanding the verdict, or set aside any judgment which may have been entered and render another judgment, as the case may require."

ORS 18.140(3):

Plaintiff challenges the judgment n.o.v. on both procedural and substantive grounds. As to his procedural argument, he contends that the n.o.v. was improper because defendant did not challenge the sufficiency of the evidence of liability either by motion for nonsuit or for directed verdict. While the record does not disclose a specific motion for directed verdict, by reasons of in-chambers discussions and defendant's requested peremptory instruction the trial court had an opportunity to consider and rule upon the propriety of either submitting the case to the jury or directing a verdict for defendant.[3] We therefore will consider plaintiff's substantive challenge to the judgment n.o.v.

"A motion in the alternative for a new trial may be joined with a motion for judgment notwithstanding the verdict, and unless so joined shall, in the event that a motion for judgment notwithstanding the verdict is filed, be deemed waived. When both motions are filed, the motion for judgment notwithstanding the verdict shall have precedence over the motion for a new trial, and if granted the court shall, nevertheless, rule on the motion for a new trial and assign such reasons therefor as would apply had the motion for judgment notwithstanding the verdict been denied, and shall make and file an order in accordance with said ruling."

(Repealed Or Laws 1979, ch 284, § 199; replead, ORCP.)

[3] In ruling on defendant's motion for judgment n.o.v., the trial court stated:

"At the close of the testimony on February 1, 1979, *the matter of a directed verdict in favor of the defendant Pollard was discussed in chambers off the record.* Attorneys for both parties were requested to research the matter and bring the results of this research to the court the following morning. The following morning defendant Pollard's motion for a directed verdict was further discussed in chambers. *Defendant Pollard had submitted a requested jury instruction directing the jury to return a verdict in favor of defendant Pollard.* As far as the court is concerned, the propriety of submitting the case to the jury or directing a verdict in favor of defendant Pollard was fully considered prior to closing arguments and jury instructions. Plaintiff contends that defendant is precluded from moving for a judgment notwithstanding the verdict because defendant Pollard did not during trial move for a directed verdict. Any further motion on the record by defendant Pollard would have been a meaningless and unnecessary formality." (Emphasis supplied.)

[804]

Plaintiff contends that the trial court erred in granting the judgment n.o.v. because the evidence was sufficient to support the conclusion that defendant intentionally interfered with plaintiff's contractual relations with KCS, resulting in injury to plaintiff, for purposes of revenge rather than to benefit the corporation.

In determining what plaintiff must prove to make out a claim for wrongful interference with business relationships, the Supreme Court in *Straube v. Larson,* 287 Or 357, 361, 600 P2d 371 (1979), enunciated the following test:

> "* * * [T]o be entitled to go to a jury, *plaintiff must not only prove that defendant intentionally interfered with his business relationship* but also that *defendant had a duty of non-interference; i.e.,* that he interfered for an *improper purpose* rather than for a legitimate one, or that defendant used improper means which resulted in injury to plaintiff. Therefore, a case is made out which entitles plaintiff to go to a jury only 'when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.' * * *" (Quoting from *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 209, 582 P2d 1365 (1978).)

The trial court stated it granted the judgment n.o.v. because plaintiff's claims against defendant, as set forth in plaintiff's amended complaint, either "did not

Although it is true that refusal of a motion for a directed verdict is generally a condition precedent to the court's power to order a judgment n.o.v., *Stark v. Henneman,* 250 Or 34, 36, 440 P2d 364 (1968), the primary reason for the requirement is to give the trial court an opportunity to consider and rule upon the issue before an appellate court can properly be asked to do so. *Becker v. Pearson,* 241 Or 215, 222, 405 P2d 534 (1965).

Moreover, defendant requested the court to direct the jury "as a matter of law to return a verdict in favor of defendant and against plaintiff." "[S]uch a requested instruction is tantamount to a motion for a directed verdict when the issue is the trial court's authority to grant a motion notwithstanding the verdict." *Becker v. Pearson, supra; see Crooks v. Pay Less Drug Stores,* 285 Or 481, 485, 592 P2d 196 (1979); *cf. Remington v. Landolt,* 273 Or 297, 301, 541 P2d 472 (1975).

amount to interference with plaintiff's contractual relation with his employer" or "were not established by the evidence."[4]

In his amended complaint, plaintiff alleged that defendant Pollard "intentionally and with improper motives commenced a series of acts which interfered with plaintiff's contract of employment with defendants Trans-Mark and KCS, in such a manner as to cause said defendants to terminate plaintiff's employment contract and cause plaintiff to be fired * * *." He further alleged that defendant caused plaintiff to be fired because plaintiff complained to defendant that his relationship with his girlfriend interfered with the office's ability to perform its duties and that defendant wrongfully, without cause, harassed and criticized plaintiff's work performance with the intent to prevent plaintiff's performance of his duties. If proved, together with damages and causation, those allegations satisfied the elements of the tort, as enunciated in *Straube*.

A judgment n.o.v. should not be granted where there is any evidence to support the verdict. *Hill v. Garner*, 277 Or 641, 643, 561 P2d 1016, *appeal dismissed*, 434 US 989 (1977). In the present case, there are several material conflicts in the evidence; however, as is proper after a verdict for plaintiff, we review the evidence in the light most favorable to the plaintiff.

Plaintiff entered the railroad business in 1947. In 1962, he was hired by KCS as a travelling freight agent, based in Portland. In 1968, defendant was sent to the Portland office to replace the sales manager who

---

[4] The trial court also stated as a ground for granting judgment n.o.v. that "Mr. Pollard was clearly acting in the course and scope of his employment for Trans-Mark Services, Inc. This conclusion was not only established by the evidence but it is admitted in plaintiff's complaint." We do not agree that this point is dispositive. An employee may act in the course and scope of his employment, but it is still a jury question as to whether he is acting to benefit the corporation or to further improper personal motives.

had retired. In 1974, defendant was promoted to regional vice president, and plaintiff was promoted to sales manager. At a celebration party, defendant stated that plaintiff had done an excellent job and that his own promotion was made possible by plaintiff's efforts. Between 1968 and 1975, plaintiff testified that defendant had no particular criticism of plaintiff's work and they had no substantial personality conflicts. Moreover, employees testified they had no criticism of plaintiff's work, and one testified that plaintiff's work was exceptional. On the other hand, there was testimony that even prior to 1974 plaintiff and defendant had personality and communication conflicts.

In mid-1975, defendant was transferred to the KCS office in New York. Shortly thereafter, a problem arose in the Portland office, involving a woman with whom defendant was having an extra-marital affair. That woman wrote a letter, ostensibly from her employer who was a customer of the railroad, to the president of the railroad in Kansas City. In the letter she criticized the Portland office staff. There was testimony that her sole purpose in writing the letter was to prevent defendant's permanent transfer to New York. The president of the railroad wrote plaintiff and demanded an investigation. Subsequently, the vice president of the railroad came to Portland to discuss defendant's extra-marital affair, word of which had reached Kansas City. Plaintiff testified he had been told during the ensuing discussions that the vice president planned to fire defendant. Defendant thereafter returned from New York and met with plaintiff and other members of the Portland office to discuss the complaint letter and the woman who wrote it.

Plaintiff testified that when he asked defendant to vindicate the office, defendant became extremely defensive and angrily stated:

"I will write a letter. That's all I'll do. If you continue to pursue the matter, I'll get you. I have the

connections in Kansas City. You do not. I don't care anymore. I am about to tell this damn outfit to go to hell anyway."

Plaintiff construed this statement to mean defendant would cause him future difficulty with the company. Subsequently, defendant wrote a letter to Kansas City stating that the complaint letter had been a mistake.

After this incident the relationship between plaintiff and defendant progressively deteriorated. Plaintiff testified that although he was working 14-16 hours per day and on weekends, nothing he did pleased defendant; he stated that defendant criticized him for spending too much time out of town and then criticized him for spending too much time in the office.

In the fall of 1975, a profit incentive plan was implemented by the company which required employees to complete profiles of their accounts together with business forecasts and goals by December 31, 1976. Plaintiff testified that defendant rejected all his incentive plan reports and that his complaints were unjustified. Defendant, however, testified that plaintiff's reports were incomplete and that plaintiff was unable to cope with the demands of his job. Defendant prepared evaluations of plaintiff's on-the-job performance for the head office, rating plaintiff as "marginal" in all but one category. Plaintiff testified that these evaluations were false.

In December, 1976, a company meeting was held in Kansas City in which both plaintiff and defendant were required to present their incentive plan profiles. Plaintiff testified that defendant needed plaintiff's assistance to complete his own reports. No one at that meeting criticized plaintiff's work performance. Nevertheless, in January, 1977, based on defendant's recommendation, plaintiff was given 90 days notice of termination. Defendant testified that, although he himself lacked the power to hire or fire, plaintiff would not have been fired without his recommendation. Shortly thereafter, plaintiff's attorney

sent a letter to Kansas City to explain plaintiff's side of the story. Five days later, defendant instructed plaintiff to clear out his office and not to return. Defendant then notified the railroad president that he heard from various accounts of plaintiff's that plaintiff was attempting to divert business from KCS. Plaintiff denied any such activity.

There was evidence that because of defendant's actions plaintiff suffered loss of employment, damage to his reputation and emotional injury. At the time of plaintiff's termination he was earning approximately $18,000 per year; from the time of his dismissal until trial he was unemployed. He was dismissed one month short of 30 years service, thereby preventing him from receiving a railroad pension.

We conclude that there was evidence from which the jury could find that plaintiff and defendant worked well together until the 1975 letter writing incident by defendant's mistress, which jeopardized defendant's position with the company; that after plaintiff complained to defendant that defendant's extramarital affair had adversely affected the office, defendant purposefully set out to interfere with plaintiff's employment order to gain personal revenge rather than to benefit the interests of the corporation; that even though plaintiff was a competent employee, defendant unreasonably rejected plaintiff's work and falsely evaluated his on-the-job performance; that defendant ultimately did "get plaintiff" by recommending plaintiff's dismissal to the head office; that without defendant's recommendation plaintiff would not have been fired; that defendant's desire for revenge was not satisfied and thus he lied to the head office in a further attempt to discredit plaintiff by saying that he was trying to divert business from the company; and that defendant's actions caused plaintiff loss of employment, emotional injury, and damage to his reputation. Therefore, since there was evidence to support the verdict, judgment n.o.v. was improperly granted.

[809]

Pursuant to former ORS 18.140(3), the trial court also granted defendant Pollard's alternative motion for a new trial on the grounds that: (1) the damages awarded were excessive and appeared to have been given under the influence of passion or prejudice, former ORS 17.610(5); (2) the evidence was insufficient to justify the verdict and that the verdict is against the law, former ORS 17.610(6); and (3) the trial court erred in the trial, former ORS 17.610(7).[5]

Our scope of review of the propriety of an order for new trial is summarized as follows:

"In the absence of an error at law, a verdict cannot be set aside unless the court can affirmatively find that there is no evidence to support the verdict. Oregon Constitution, Amended Article VII, Section 3.

"* * * [T]he party seeking to reverse the trial court's order setting aside a judgment and granting a new trial must show that none of the grounds specified in the motion for a new trial are valid. Such an order, moreover, must be given every intendment. [Citations omitted.] It is sometimes said that the order of the trial court granting a new trial will be set aside only for an abuse of discretion. [Citations omitted.] It is our duty, however, to reverse if the order is based on an erroneous conception of the law." *Hightower v. Paulson Truck Lines*, 277 Or 65, 69, 559 P2d 872 (1977).

We, therefore, turn to an examination of each of the grounds assigned for new trial: (1) As to the excessiveness of the damage award, the Supreme Court held in *Van Lom v. Schneiderman*, 187 Or 89, 94, 210 P2d

---

[5] Former ORS 17.610 provided in pertinent part:

"* * * * *

"(5) Excessive damages, appearing to have been given under the influence of passion or prejudice.

"(6) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law.

"(7) Error in law occurring at the trial, and excepted to by the party making the application."

(Repealed Or Laws 1979, ch 284, § 199.)

461 (1949), that since the adoption of the constitutional amendment, Art VII, § 3,[6] there is no judicial review of a jury verdict merely for excessiveness of damages. *See also Trenery v. Score,* 45 Or App 611, 608 P2d 1220 (1980). Moreover, defendant has failed to present any evidence under former ORS 17.610(5) that the verdict was influenced by passion and prejudice. *Foley v. Pittenger,* 264 Or 310, 503 P2d 476 (1972). All a court can do, insofar as the facts are concerned, is to examine the record to determine whether it "can affirmatively say there was no evidence to support the verdict." Or Const, amended Art VII, § 3. Here, after examining the record, we find there was evidence to support the jury verdict as to the damage award.

(2)  Regarding the ground that the evidence was insufficient to justify the verdict and that the verdict was against the law, we have already considered and resolved those issues against defendant.

(3)  As to alleged errors in the trial, defendant's motion for new trial stated:

(a)  "The errors in the trial included failure to withdraw each of plaintiff's claims as requested at the time of the close of plaintiff's case, the close of all evidence and in the requested instructions.

(b)  "A new trial should be granted because the court confused the jury with its instruction on the burden of proof in its characterization of the answer."[7]

---

[6] Or Const, amended Art VII, § 3:

"In actions at law, * * * the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. * * *"

[7] As to plaintiff's specific burden of proof, the court instructed:

"In order to prevail in this case, the Plaintiff must prove by a preponderance of the evidence that the Defendant Pollard when he recommended the Plaintiff's discharge was neither acting for the benefit of KCS or Trans-Mark Services, Incorporated, nor motivated to

Consequent on our conclusion regarding the sufficiency of the evidence, we find that the court did not err in refusing to withdraw plaintiff's claims. Moreover, as to any alleged error regarding the jury instruction the rule is that "cases should not be reversed upon instructions, despite technical imperfections, unless the appellate court can fairly say that the instruction probably created an erroneous impression of the law in the minds of the jurymen which affected the outcome of the case." *Waterway Terminals v. P.S. Lord,* 256 Or 361, 370, 474 P2d 309 (1970). Here, the jury instruction was not prejudicial to defendant; if anything, the instruction was beneficial to defendant.

It follows that the orders are reversed and the case remanded to reinstate the judgment on the jury verdict for plaintiff, together with interest at the legal rate from the date the verdict was rendered. *Weber, Adm'r v. Te Selle, Adm'r,* 191 Or 85, 89, 228 P2d 796 (1951); *see Gow v. Multnomah Hotel, Inc.,* 191 Or 45, 75, 224 P2d 552, 228 P2d 791 (1951); *see also Pearson v. Schmitt,* 260 Or 607, 610-11, 492 Or 269 (1971).

Reversed and remanded.

that end. In other words, Mr. Pollard's sole motivation in recommending Plaintiff's discharge must have been either to gain a personal advantage or to harm Mr. Huston.

"If in whole or in part Defendant Pollard was motivated to benefit KCS or Trans-Mark Services, Plaintiff cannot prevail even though you do not believe Pollard's reasons were not well founded and the effect of his action was not, in fact, beneficial. You are not to substitute your judgement [sic] for Mr. Pollard's judgement [sic]. Mr. Pollard may have been dead wrong in his conclusion that Mr. Huston should be terminated. Nevertheless, Plaintiff cannot gain your verdict if he believes he was acting in some measure for the benefit of KCS or Trans-Mark.

"It is not enough that the Plaintiff showed that Defendant did not like the Plaintiff or even that he was pleased that Plaintiff was terminated. It is also not enough to show that Defendant would benefit personally by the termination. If you find that one of the reasons Plaintiff was terminated was to benefit Trans-Mark Services, Inc., then your verdict has to be for the Defendant."