CHARLES H. SMYTH *et al.*

*v.*

HORACE H. STODDARD.

*Opinion filed June 16, 1903.*

1. CONTRACTS—*when literal performance of contract cannot be insisted upon.* Strict performance of a provision of a contract between landlord and tenant whereby the former agreed to pay the latter the reasonable value of certain fixtures or allow him to remove same whenever he *delivered possession* of the premises to the landlord, cannot be insisted upon by the landlord, if, by a sale of the premises, he has put it out of the tenant's power to deliver possession to him.

2. LANDLORD AND TENANT—*what amounts to conversion of property by landlord.* If a landlord agrees to pay his tenant the reasonable value of a barn erected by the latter or allow him to remove the same upon delivery of the premises under any lease, a sale of the property, including the barn, amounts to a conversion as to the barn, and the tenant is entitled to recover its value as it stood on the day the sale was made.

3. SAME—*what does not relieve landlord from liability for funds converted.* Where a landlord sells his farm, including a barn erected thereon by his tenant under an agreement that the latter would receive the reasonable value thereof on surrender of the premises, the fact that the tenant subsequently rents the farm and barn from the landlord's grantee does not relieve the landlord from liability to pay the tenant the reasonable value of the barn.

4. INTEREST—*equity follows the law in allowance of interest.* In a proceeding in equity to compel a party to account for proceeds of property converted to his use, it is proper to allow interest on the value of the property at the time of the conversion.

5. APPEALS AND ERRORS—*objections to the master's findings must be made below.* An objection that the master, on accounting, failed to make an allowance for rent for a certain period cannot be urged on appeal, where no objection or exception was taken to the master's report upon that point.

6. FIXTURES—*when blacksmith shop is not a fixture.* A blacksmith shop moved by a tenant to the rented premises on runners and left upon the runners during the time it was on the rented premises is not a fixture.

7. SAME—*when corn-crib is a fixture.* A corn-crib erected by a tenant upon posts sunk fifteen inches in the ground is to be regarded as a fixture, as between the tenant and a party who purchased the farm without notice of the verbal agreement between the tenant and the then owner of the farm for its removal.

8. COSTS—*master not entitled to allowance for stenographer's fees.* A master in chancery is not entitled to an allowance, as for official services, for the amount paid by him to a stenographer for taking the testimony.

*Smyth* v. *Stoddard*, 105 Ill. App. 510, reversed in part.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

N. M. JONES, for appellants.

MERRIAM & PHELPS, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On the 13th day of August, 1888; appellants, Charles H. Smyth and Roger P. Chew, were the owners of a farm near LaGrange, Illinois, which was occupied by the appellee, Stoddard, as their tenant, under a written lease. There stood upon the farm a stone foundation for a barn. The appellee desired the appellants to complete the barn on this foundation. They were unwilling to comply with this request, but on said day executed a written instrument and delivered it to the appellee, authorizing him to erect, at his own expense, a covering and stalling on and over the said stone foundation. Said written instrument contained also the following agreement: "And we [the appellants] agree that whenever you [the appellee] surrender and deliver up possession of said farm to us at the expiration of any lease you may hold from us, that we will either pay you a fair consideration for said covering and stalling at such time, or we will give you a reasonable time within which to remove said covering and stalling from said stone foundation and from said premises." Under this agreement the appellee, at his own expense, in the fall of 1888 or winter and spring of 1889, constructed a covering and stalling upon the said foundation. Stoddard's lease expired in April, 1889, and a new

lease was executed by the appellants to him which expired in April, 1892. On the 24th day of November, 1891, and while appellee was in possession of the farm under said lease from appellants which gave him the right to occupy the farm until April 30, 1892, the appellants sold the farm to one Robert C. Seyd, and assigned to Seyd the lease which they had executed to the appellee. This lease contained no reference to the agreement giving the appellee the right to remove the covering and stalling or to receive a fair consideration therefor, nor did the appellants make any reference in their deed to Seyd to the rights and interests of the appellee in the covering and stalling in the barn, nor did they inform Seyd of the agreement between themselves and Stoddard with reference to the barn. The deed from appellants to Seyd was not placed of record until March 8, 1892, and it seems that Stoddard was not advised of the change of ownership until after he had entered into an agreement with the appellants, in January or February, 1892, to renew his lease for the farm from May 1, 1892, to April 30, 1893. The appellants were non-residents, and all of the leases and the agreement in question were executed by N. M. Jones, as their agent.

On April 5, 1893, prior to the expiration of this last lease, the appellee notified Seyd of his claim to the covering and stalling of the barn and that he intended to remove the same from the farm, and on the 6th day of April, 1893, appellee delivered to Mr. Jones, as the agent of the appellants, a written notice that as his lease was about to expire, he desired that the appellants, in pursuance of the agreement, should elect and inform him whether they would pay him for the barn built by him on said premises, or give him a reasonable time within which to remove the same, in accordance with the provisions of said contract. The notice contained the following: "I am willing, and hereby offer, to sell said barn to you for a fair consideration, or to remove the same if

I can be assured that I can have reasonable time to do so, and desire to be informed immediately whether you wish to buy the barn and how the reasonable consideration shall be ascertained, or, if you desire me to remove the same, what time you will give or secure me to remove the building in." The appellants took no action in response to this notice. Appellee leased the premises from Seyd for the term of one year.

On the first day of June, 1893, Seyd filed a bill in chancery against the appellee for an injunction restraining him from removing the structure, and a preliminary injunction was granted. Appellee filed an answer to this bill, and also his cross-bill, making the appellants parties. The appellants answered the cross-bill, in which they claimed that Seyd, when he purchased the farm of them, knew of their agreement with appellee, and that the latter was not entitled to an accounting against them, as claimed by the cross-bill, and in no event were they liable for the stalling and covering at the time it was built, but only at the time of the accounting, if any should be ordered. No steps were taken in the case until April 22, 1899, when the case was referred to the master. During this interval the appellants had filed a bill to foreclose a mortgage given to them on the farm by Seyd for an unpaid balance of the purchase price and had obtained a decrce of foreclosure, had purchased the farm at a sale made thereunder and received a master's deed conveying the farm to them. On the 15th day of March, 1901, while the cause was on hearing before the master, the appellants filed a supplemental answer to the cross-bill of the appellee, and also filed their cross-bill, in which they averred that the appellee had wrongfully removed from the farm a corn-crib and a blacksmith shop, and demanded that he should account to them for the value thereof, and also that he should be required to pay to them the sum of $100 for the rent of the farm for the months of February and March, 1899, under their claim

they held title to the farm for those two months. The parties produced their proofs before the master, and that official made his report, recommending, in substance, that the preliminary injunction issued upon the original bill filed by said Seyd should be made perpetual, and that a decree should be entered in favor of the appellee, under the prayer of his cross-bill, against the appellants in the sum of $3253.77. Objections filed to the report were over-ruled and a decree was entered in pursuance of the finding and report of the master, the court adding the sum of $16.41 for interest accruing after the date of the master's report, and also decreeing that appellants should pay the cost of the proceedings. The decree was affirmed by the Appellate Court for the First District on appeal prosecuted by the present appellants, who have brought the case into this court by a further appeal.

The chancellor found that the appellants entered into a written agreement authorizing the appellee to construct the stalling and covering for the barn at his own expense, and binding them that at the termination of any lease he held from them, and on surrender of the premises by him, they would give him a fair consideration for the stalling and covering or allow him to remove the same within a reasonable time; that the appellants "sold and conveyed said premises to the complainant, Robert C. Seyd, without making any reservation of said covering and stalling, and that the same passed by said deed to said Seyd as part and parcel of the said realty so conveyed to him,  *  *  *  and that by the sale and convey-ance of said premises to said Seyd they not only put it beyond their power to secure to Stoddard the privilege of removing said covering or stalling, but converted the same to their own use, and thereby became liable to pay said cross-complainant, Stoddard, the value of the same on the 30th day of April, 1893, when he became entitled to the performance of their contract with him, and in-terest thereafter." On these findings the chancellor per-

petually enjoined appellee from removing the stalling and covering from the farm.

The obligation of the appeal bond given by the appellants is to the appellee only. The conditions of the bond contain no reference to any portion of the decree excepting the money decree in favor of Stoddard, the appellee. The appeal is, therefore, from that branch of the decree which awards a money decree in favor of the appellee and against the appellants. The decree in other respects remains unappealed from and in full force and effect.

There is no force in appellants' contention that appellee's right to recover fair consideration for the covering and stalling was dependent upon literal compliance, on his part, with that clause in the agreement which bound the appellants to so make payment to him only whenever he should surrender and deliver possession of the farm to appellants at the expiration or termination of any lease he should hold from them. The appellants having, during the term of the letting by them to the appellee, invested Seyd with all their interests and rights in the farm, they deprived themselves of the right to insist that they had authority to receive the possession from the appellee at the termination of that letting. He could lawfully, because of their own act, attorn to Seyd, their grantee, (*Hardin v. Forsythe*, 99 Ill. 312,) and for that reason, if other reasons were lacking, appellants could not escape liability by invoking a strict construction of their contract and literal compliance therewith.

If it were indispensable it should be determined whether the appellee kept the premises, under leases and extensions of leases made by appellants to him, until the 30th day of April, 1893, as found by the chancellor and Appellate Court, we should be inclined to agree with the conclusion drawn from the evidence by those tribunals. But the appellants having, by the conveyance to Seyd, authorized the appellee to deliver up the farm to Seyd at the termination of the period of any let-

ting by appellants, and appellee having so attorned, his right of recovery could not be defeated by the provision in the agreement that such right was dependent upon a surrender of the premises to the appellants at the termination of any lease made by them,—and this without deciding that appellants' liability was dependent upon any such strict and literal construction of the contract. By the sale and conveyance of the property to Seyd the appellants rendered it impossible for them to carry out their agreement of August 13, 1888, with appellee, except by paying him the value of the covering and stalling. The appellee proceeded seasonably to give notice of his rights and to institute suit in the court to enforce them.

The only question of serious moment raised by the appeal is as to the amount fixed by the decree as a fair consideration for the stalling and covering of the barn. The chancellor was clearly correct in the view that the appellee had a right to recover the value of the barn on the 30th day of April, 1893. The appellants having sold the barn with the farm, and thus put it out of their power to permit the appellee to remove the structure, were properly regarded as having received the value of the barn from the purchaser of the farm and converted the same to their own use, and hence liable to pay for the value of the barn as it stood,—not its value as torn down for removal. The conversion of the barn by them constituted an election on their part to pay the appellee "a fair consideration for said covering and stalling," to quote from the agreement. The fact that the appellee rented the farm from Seyd, and at a later period from the receiver appointed under the prayer of the bill filed by appellants for the foreclosure of the mortgage on the farm, had no effect to relieve the appellants of their liability to pay a fair consideration for the barn or to deprive the appellee of the right to receive the same. The appellee, of course, during the periods of said last named lettings, had the benefit of the use of the barn, but he

paid rent therefor to Seyd and to the receiver, respectively. The amount of a fair consideration to be paid for the covering and stalling was arrived at by ascertaining the cost of the same at the time it was built, in 1888 and 1889, and allowing for the change in the price of the material used in its construction, and deducting ten per cent for deterioration between 1888-89 and April, 1893. The witnesses testified with great particularity as to the cost of the material and labor, and at such length and with such minuteness that it would extend this opinion to an unwarranted length to discuss it in detail. We would have been better satisfied with the finding of a smaller amount, but upon a careful consideration of the testimony we find we are not able to demonstrate that the chancellor should have arrived at a different conclusion.

The twenty-sixth objection to the master's finding and report was, that $100, being the cost of a pump, was included in the amount to be paid by the appellants under the contract. The objection was overruled, and in this we think error occurred. The pump did not constitute a part of the barn. It was placed in the well for the convenience of the appellee in caring for his stock. The undertaking of the appellants to render to the appellee a fair consideration for the barn cannot, by any fair and reasonable intendment, be construed to include the cost of the pump.

There was no error in allowing interest on the amount which appellants should pay for the barn. The transfer of the barn by the appellants to Seyd amounted to a conversion of the structure by the appellants. The proper measure of damages in actions of trover for the conversion of property includes interest on the current value of the property. (*Sturges* v. *Keith,* 57 Ill. 451; 3 Sutherland on Damages, 2405, 2406.) Equity follows the law in the allowance of interest. 16 Am. & Eng. Ency. of Law, (2d ed.) 999.

The appellants, on the first day of February, 1899, received title to the farm by deed from the master, under the foreclosure. The appellee was then in possession under a lease from the receiver, and he remained so in possession during the month of February, and, as appellants claimed, also during a portion of March. Appellants, by their cross-bill, asked for a decree against the appellee for rent for the months of February and March, at the rate of $50 per month. The master required appellee to account for $50 for the rent for the month of February but made no allowance for the rent for March. It is urged it was error to refuse to require appellee to account for rent during March. Many objections and exceptions to the report of the master were filed, but none questioning the correctness of the ruling of the master on this point. The objection cannot be raised for the first time in a court of review, but must be regarded as waived. *Brainard* v. *Hudson,* 103 Ill. 218; *Snell* v. *Deland,* 136 id. 533.

It was not error to refuse to require the appellee to account for the value of a blacksmith shop which he removed from the farm. It appeared from the testimony the appellee moved the shop to the farm by means of two poles or runners attached to the bottom of the shop, and that it was brought there to be used temporarily, and remained resting on the runners by means of which it had been moved to the farm, and was removed by dragging it away on the runners. The blacksmith shop did not become a fixture and a part of the realty.

The master presented the following demand for his official services:

Stenographer's fees for taking testimony................... $82.00
Making report............................................... 150.00
                                                           ─────────
    Total...................................................$232.00

The decree required the appellants to pay "the sum of $232 as master's fees and expenses" incurred by the master. The master should have filed an itemized state-

ment of the official services rendered by him and of the fees allowed by law for each item of service, and should not have included, in addition thereto, the amount paid to a stenographer. (*Schnadt* v. *Davis*, 185 Ill. 476.) In the case cited the practice of making a charge for master's services in a gross sum was condemned. A charge in gross furnishes a convenient cover for illegal fees and for extortion, and should not be received or acted upon by the chancellor. Counsel does not, however, ask any relief from the decree as to payment of the fees allowed to the master, but urges that it was error to decree that appellants should be required to pay the amount of $82 allowed for stenographer's fees. This charge was illegal, and the decree requiring its payment cannot be sustained.

The appellee was required by the decree to pay $85 as the value of a corn-crib which he removed from the premises. The appellants contend that the value of the crib should have been fixed at $147.08, while the appellee argues, by way of cross-error, that it was error to require him to account in any sum for the crib. Appellee constructed the crib at his own expense, under a verbal agreement with one Dreyer, who then owned the farm, or a part interest therein, that he should be allowed to remove the crib. Among other reasons for holding the crib to be a part of the realty it was shown that it stood on posts, which were sunk in the earth to the depth of fifteen inches. The appellants afterwards became seized of the legal title to the farm, and there is no proof they had notice or knowledge of the verbal agreement under which the appellee claimed the right to remove the crib. It passed to appellants as part of the farm. We are of the opinion that the appellee was correctly charged with the value of the building, and that the value thereof was properly fixed by the court.

It follows from what has been said, it was error to include the value of the pump ($100) in the amount which the appellants were to be required to pay as the fair
203—28

consideration for the stalling and covering of the barn, and also error to decree that appellants should pay the fees of the stenographer who reported the evidence for the master. The decree so far as it decrees payment of the stenographer's fees is reversed. The amount decreed to be paid by the appellants to the appellee must be reduced by the subtraction of $100, the value of the pump, and $37.98 interest thereon, at five per cent, from April 30, 1893, to the date of the decree, (interest having been allowed on that sum at that rate for that period of time,) leaving $3132.20, for which the appellee should have a decree. The decree will be affirmed for that amount, at the cost of the appellee.

*Affirmed in part and in part reversed.*