Argued April 7, affirmed June 6, 1978

# HUSKY LUMBER CO., INC., *Respondent,*
## *v.*
# D. R. JOHNSON LUMBER COMPANY,
## *Appellant.*
## (TC 76-2355, SC 25415)

579 P2d 235

Donald A. Dole, Roseburg, argued the cause and filed a brief for appellant. With him on the brief were Long, Neuner, Dole, Caley & Kolberg and Jeffrey Pugh, Roseburg.

Paul E. Geddes, Roseburg, argued the cause and filed a brief for respondent. With him on the brief were Geddes, Walton, Richmond, Nilsen & Smith, Roseburg.

Before Holman, Presiding Justice, Howell and Lent, Justices, and Joseph, Justice Pro Tempore.

LENT, J.

**LENT, J.**

Plaintiff brought this action at law to recover damages for defective lumber sold to it by the defendant. The case was tried to the court and resulted in a judgment in favor of the plaintiff for $4,662.15 in compensatory damages. The defendant on appeal challenges the amount of damages. We affirm.

Two issues are raised on appeal. The first is whether there is sufficient evidence to support the trial court's findings on the issue of damages. The second is whether the plaintiff was precluded from recovering the incidental damages claimed for failure to plead them specially.

The following facts are undisputed. Plaintiff, a lumber brokerage firm, purchased 103,092 board feet of mixed ponderosa and sugar pine lumber from defendant, a manufacturer of lumber, and resold the lumber to Klamath Molding Mill, Inc. (Klamath), a molding remanufacturing company. Representatives of Klamath, who picked up the shipment at the defendant's plant, inspected the lumber for grade and moisture content and found it to be within the appropriate standards. The lumber was then ripsawed into various widths and sent through a cutoff saw, where knots and other apparent and naturally occurring defects were cut out. The short pieces were then put through a "finger-jointer" to make boards of uniform length. These boards were then stored until they were needed for reprocessing to fill a particular order.

When the first order requiring this particular type of lumber was run, the quantity needed to fill the order was pulled from storage, resawed center, fed through a planer or molder, then inspected for defects. After approximately ten percent of the finger-jointed lumber was run through the molding process, it was discovered that a significant percentage of the lumber evidenced cracks or checking along the resawed surface. Interior checking of this type cannot be discovered at the initial inspection of the lumber or at

[ 483 ]

any point prior to completion of the planing process. Only after the surface has been finished by the molder are these cracks detectable.

When Klamath discovered the defects, it called the plaintiff's representative, who in turn called the defendant to send representatives to the Klamath plant to inspect the lumber. The defendant's general manager, Donald Johnson, went with his mill manager and salesman to Klamath's plant and met there with Jay Robbins, Klamath's president. Robbins showed Johnson and his associates the defective lumber, and all agreed that the cracking was caused by improper kiln drying by the defendant. When lumber is kiln dried too rapidly, as this lumber was, the moisture on the inside cannot escape and, in effect, explodes, causing internal cracks.

Robbins first asked Johnson to take the lumber back, but the two men finally agreed to an arrangement more satisfactory to the defendant. Klamath would process the lumber in a manner which would yield maximum recovery, would tally the unsalvageable lumber, and would withhold payment accordingly.

At trial, additional terms of this agreement were in dispute. Defendant contended that Klamath agreed to store all the defective lumber at its plant, so that defendant could inspect and tally the amount before settlement. The trial court found that while Klamath did agree to salvage as much of the nondefective lumber as possible, it did not agree to set aside and store all the defective lumber for the defendant's inspection.

For the purposes of this appeal, the defendant accepts the trial court's finding as to the terms of the agreement, but contends that the award of damages was not supported by the evidence. The trial court found that the plaintiff had proved damages of $4,662.15, the exact amount prayed for in plaintiff's complaint.

■ Findings of fact of a law court are just as binding on us as a jury verdict. ORS 17.435; *Hendrix v. McKee,* 281 Or 123, 126, 575 P2d 134 (1978). The scope of our review is limited by Article VII (Amended), § 3, of the Oregon Constitution, which states that "* * * no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say that there is no evidence to support the verdict." *See Shepler v. Weyerhaeuser Company,* 279 Or 477, 484, 569 P2d 1040 (1977), *cert den* 98 S Ct 903 (1978). Thus, if there is any evidence to support the trial court's award, we must affirm it.

Defendant's argument of insufficient evidence is based on the manner in which plaintiff attempted to establish a foundation for the amount of damages prayed for in the complaint at trial. The factual background appears to be as follows:

After approximately 65 to 70 percent of the lumber had been processed through the molder, because one of plaintiff's key employes was leaving the company, plaintiff asked to settle the account with Klamath, since Klamath had estimated it could take up to two years to completely process all of the shipment in question by filling orders as required. Robbins, Klamath's president, testified that Klamath had kept a running inventory of the unsalvageable lumber up to this point and applied the average percentage of unsalvageable material to the yet unprocessed material to come up with the figure of 11,008 board feet of total unsalvageable lumber. Klamath then took the average cost of all the material, increased by $10 per thousand board feet for shipping costs, and applied it to the total amount of defective lumber. To this product Klamath added $60 per 1,000 board feet for the cost of manufacturing through the molding process of the defective lumber and withheld the total amount, $4,662.15, from its payment to the plaintiff.

■ At trial, Robbins was cross-examined as to the manner and result of the tallies of the unsalvageable

[ 485 ]

defective lumber. There appear to have been seven or eight separate tallies. Robbins discovered that he had inadvertently left three or four of the "tally slips" at his plant, but testified that he could recall what the final tally was. At the close of defendant's cross-examination of Robbins, defense counsel moved to strike the testimony of Robbins relating to damages in excess of that represented by records produced at trial on the basis that such testimony was either hearsay or not based on the witness' firsthand knowledge. The court denied the motion. Defendant has not assigned as error the trial court's denial of his motion.[1] Instead, defendant appears to contend that the testimony of this witness to facts represented by the missing tally sheets must be excluded upon this court's appellate review because it is not the best evidence of those facts. Having failed to make this "best evidence"

---

[1]The motion and the ruling were as follows:

"[Counsel for the defendant]: Your Honor, that concludes my cross-examination. I would like at this time to move to strike that portion of the testimony of Mr. Robbins dealing with any information which has been related to him by third parties who are not here in court and which was not represented by business records, and particularly that portion of his testimony dealing with damages in excess of the four specific incidents for which he brought records and which were used.

"I would further move to strike that portion of the testimony dealing with the materials which were apparently supposedly processed on March 10, 1976, on the grounds and for the reason that all of the evidence has been that what this witness knows was told to him by others though he has some records that in turn contains the specific reference that it's an estimate of a third person, who is not here for the purpose of cross-examination.

"THE COURT: Well, ordinarily I would hear from [counsel for the plaintiff] on this but I wouldn't know which question and which answers that involved and I wouldn't be able to say which ones were and weren't in that at this point in the trial. I would have to deny that and it will just have to go to the weight of the evidence at this point.

"Go ahead."

The trial judge thus felt that the process of separating the complained-of testimony from other testimony would be a difficult one at this point in the trial. The trial judge indicated he would give the substance of defendant's objection appropriate consideration when he was weighing Robbins' testimony. Robbins' failure to bring the missing tally sheets and inability to establish mathematically his total damages would have justified the trier of fact in discounting his testimony. However, the fact that the trial court apparently chose to believe Mr. Robbins is conclusive upon us.

objection at trial, however, defendant is precluded from raising it on appeal.[2] *McEwen v. Ortho Pharmaceutical,* 270 Or 375, 421, 528 P2d 522 (1974); *Cox v. Ohio National Life Insurance Company,* 250 Or 7, 12, 438 P2d 998 (1968); McCormick on Evidence, § 52 at 117 (2d ed 1972).

■ Even if we were to disregard the complained-of testimony, there was competent evidence, independent of any defects in that testimony, of the amount of damages. Defendant's exhibits 1 and 2, which were memos from Klamath to plaintiff and from plaintiff to defendant, indicated the total amount of defective lumber and the method used to arrive at the total amount of damages claimed (and awarded). Defendant offered these documents for substantive purposes without qualification. Now it attempts to limit their contents. The attempt is unavailing.[3] The contents of these two documents provide sufficient evidence of damages to sustain the trial court's award.

■ Defendant argues further that the judgment must be reversed for plaintiff's failure to prove its damages

---

[2] In addition, defendant failed to assign the trial court's denial of his motion to strike as error. Therefore, that denial cannot be considered on appeal. *Zingani v. Frost,* 273 Or 774, 776, n.1, 543 P2d 674 (1975). This is not to suggest that had the best evidence objection been raised at trial, it should have been sustained. The so-called "best evidence rule" is embodied in ORS 41.640 and applies, by its terms, only to "evidence of the contents of a writing." Here plaintiff was not trying to offer evidence of the contents of a writing but only evidence of the amount of defective lumber. The fact that that evidence was memorialized in the tally sheets was purely incidental to the evidence itself. As stated in McCormick on Evidence, § 233 at 564 (2d ed 1972):

"Testimony descriptive of nonwritten transactions is not generally considered to be within the scope of the present rule and may be given without producing or explaining the absence of a writing recording the facts."

[3] In *Johnston v. McKean,* 177 Or 556, 162 P2d 820 (1945), plaintiff, in attempting to prove the existence of a transaction with the defendant, offered the defendant's business ledger in evidence. The ledger, it turned out, showed the absence of that transaction, and the court stated that "[plaintiff] cannot now complain if the court finds in [the defendant's ledger] evidence tending to corroborate the defendant's position in this case." *Id* at 572.

with "reasonable certainty."[4] In *Cont. Plants v. Measured Mkt.,* 274 Or 621, 624, 547 P2d 1368 (1976), however, we indicated that "reasonable certainty" signified nothing more than "probability." As it has been used in connection with claims for certain kinds of damages in our decisions, the term "reasonable certainty" is found to refer to the *kind of evidence* required rather than to the quantum of proof.

■■ Finally, defendant argues, apparently as an afterthought and without citation of authority, that the trial court's award of $60 per thousand board feet for manufacturing cost (total $660.48) was error, since plaintiff did not specially plead such damages.[5] It is true that plaintiff failed to plead specially the exact amount or the derivation of these "incidental" damages. Ordinarily such a failure would preclude recovery of such "collateral" damages. *Smith v. Abel et al,* 211 Or 571, 585, 316 P2d 793 (1957); *Parker v. Harris Pine Mills, Inc.,* 206 Or 187, 208, 291 P2d 709 (1955); *Smith v. Pallay,* 130 Or 282, 289, 279 P 279 (1929). However, it is obvious from plaintiff's complaint that it did not claim damages for the cost of manufacturing as a direct consequence of defendant's breach of the lumber contract by delivering defective lumber but pursuant to the agreement between defendant and Klamath that Klamath would attempt to salvage as much of the defective lumber as possible by processing it and would receive credit for the unsalvageable amount. Plaintiff was an intended third-party beneficiary of this agreement, and the agreement is specially

----

[4]The meaning of this term in our decisions is unclear. It appears to be a code for judicial disfavor for damages in the form of lost profits. *See, e.g., Wall v. S.E.C. Company,* 270 Or 553, 565-566, 528 P2d 1054 (1974); *Schafer v. Sunset Packing,* 256 Or 539, 544, 474 P2d 529 (1970); *Furrer v. Int'l Health Assurance,* 256 Or 429, 442, 474 P2d 759 (1970); *Western Rebuilders, Inc. v. Felmley,* 237 Or 191, 203, 386 P2d 813, 391 P2d 383 (1964); *Buck v. Mueller,* 221 Or 271, 282, 351 P2d 61 (1960). *See also* concurring opinion of Lent, J., in *Hardwick v. Dravo Equipment Company,* 279 Or 619, 630, 569 P2d 588 (1977).

[5]It might be noted that both plaintiff and defendant tried the case below and argued it on appeal without a single reference to the provisions of the Oregon Uniform Commercial Code. *See* ORS ch 72.

pleaded. The cost of manufacturing the defective lumber to the extent required to discover the defect was directly contemplated by all parties to this collateral agreement.

The judgment of the trial court is affirmed.