Argued and submitted April 2; reassigned August 14, the decision of the Court of
Appeals and the judgment of the circuit court affirmed December 12, 1991

Sally McKEON,
*Respondent on Review,*

*v.*

Homer G. WILLIAMS,
Front and Taylor Investments
and Charles G. Rolles,
*Petitioners on Review,*

*and*

David G. ALDERMAN,
*Defendant.*

(CC 88-06-03272; CA A61358; SC S37638)

822 P2d 699

Jacob Tanzer, of Ball, Janik & Novack, Portland, argued the cause and filed the petition for petitioners on review.

Monica M. O'Brien, of Gleason, Scarborough, McNeese, O'Brien & Barnes, P.C., Portland, argued the cause for respondent on review. With her on the response to the petition was Curt B. Anderson.

PETERSON, J.

## PETERSON, J.

The issue in this case is whether the measure of damages for a landlord's conversion of a tenant's restaurant equipment left on the premises after the tenant's right to possession of the premises has ended is the "in-place" fair market value or the fair market value of the equipment after removal from the premises. The trial court instructed the jury that "the measure of damages is the fair market value of the property after removal from plaintiff's premises." We hold that the instruction was proper.

The plaintiff is the owner of and the defendants were the tenants in a commercial building that was leased for a 20-year term beginning in 1974. The building was used for the operation of Chuck's Restaurant until 1983, when the restaurant closed. The building thereafter remained vacant, despite the defendants' efforts to find a subtenant.

The defendants continued to pay rent until 1988. In February 1988, the defendants stopped paying rent. In June 1988, the plaintiff filed an action seeking back rent. On August 31, 1988, the plaintiff notified the defendants that the lease was terminated. In October 1988, because the defendants refused to give up possession of the premises, the plaintiff filed a forcible entry and detainer (FED) action, ORS 105.110. On the day that the FED action was set for trial, the parties stipulated in open court to a judgment that the plaintiff "was entitled to restitution of the premises." The judgment also stated that "the Defendant has agreed to turn over possession of the premises as of 11-30-88, and Defendant shall have 30 days to remove its [equipment] from the premises."[1] The defendants did not remove the equipment by December 30, 1988. In early January 1989, the plaintiff refused the defendants' request for access to remove the equipment. In March 1989, the defendants counterclaimed for damages for breach of the lease and for conversion of the equipment. In June 1989, the plaintiff relet the premises, including the restaurant equipment, to a new tenant.

---

[1] The restaurant equipment included coolers, ovens, exhaust systems, a custom salad bar, and smaller items such as chairs.

A jury awarded damages to the plaintiff for breach of the lease and to the defendants for conversion. The defendants appealed, claiming that the trial court erred in (1) directing a verdict in favor of the plaintiff on the defendants' counterclaim for breach of lease and (2) instructing the jury that the proper measure of damages for the conversion of the equipment was the "fair market value of the property after removal from Plaintiff's premises" rather than the higher in-place fair market value.

The Court of Appeals, *in banc*, affirmed the trial court on both grounds in a 6-4 decision, with the dissent disagreeing only on the measure of damages for the conversion. *McKeon v. Williams*, 104 Or App 106, 799 P2d 198 (1990). The defendants petitioned this court for review of the damages issue only. We affirm the decision of the Court of Appeals.

■ The question presented is whether the measure of damages for the landlord's conversion of a tenant's personal property left on the leased premises after the tenant's right to possession of the premises has ended[2] is its in-place fair market value or its fair market value after removal from the premises. The defendants assert that the landlord benefits from the higher in-place value, either from higher rent from subsequent tenants or from increased market value of the premises, and that the in-place measure of damages includes the benefit to the landlord in being able to offer, for sale or lease, premises having the equipment in place. The plaintiff asserts that, because the property was supposed to have been removed by the tenant on termination of the lease and the tenant would have been entitled only to the removed value if

---

[2] We phrase the issue with relation to "when the tenant's right to possession of the premises has ended" for these reasons. In many cases, as here, the dispute involves nonpayment of rent by the tenant, followed by eviction and a claim by the landlord for unpaid rent. Even though the tenant's right to possession of the premises has ended, the tenant has an obligation to pay rent (past and future), subject to the landlord's obligation to mitigate damages. *U.S. Nat'l Bank v. Homeland*, 291 Or 374, 631 P2d 761 (1981). Stating the issue in terms of when the tenant's right to possession of the premises has ended is more precise than stating the issue in terms such as "after the lease has been terminated" or "after termination of the lease," because the word "termination" may imply that all obligations under the lease have ended. *See Wright v. Baumann*, 239 Or 410, 416 n 7, 398 P2d 119 (1965) (the landlord's reletting of the leased premises after tenant's abandonment "does not of itself necessarily effect a termination of the lease").

the property had been removed, the tenant would receive a windfall if the landlord were required to pay more than the removed value. The landlord contends that the tenant should be put in the position that it would have occupied had the conversion not occurred, and no more.

This question was considered but not decided in *Atlas Hotel Supply v. Baney*, 273 Or 731, 543 P2d 289 (1975). That case also involved the conversion of restaurant equipment by a lessor. There, the plaintiff was in the restaurant supply business. It leased restaurant equipment to a restaurant operator. The defendants later purchased the restaurant premises and obtained possession of the equipment. They discussed purchasing the equipment from the plaintiff. After unsuccessful negotiations between the plaintiff and the defendants for the purchase of the equipment, the plaintiff filed an action for conversion. The plaintiff contended that the measure of damages was the value in-place. The defendants asserted that the measure of damages was the value "removed from the restaurant premises." 273 Or at 740. Noting an apparent "split of authority, as well as considerable uncertainty, upon the question whether the proper measure of damages * * * is the market value of such property 'in place' or 'in a removed state' [footnoting pro and con decisions from other courts]," the court declined to reach the question, saying:

> "We need not decide that question in this case, however, because it appears upon examination of the record that the award by the trial court of damages in the sum of $75,000 is supported by substantial evidence on either an 'in place' or 'in a removed state' basis." *Id.* at 742.

■ After reviewing precedents of this court and other courts, some of which are discussed below, it is apparent that, in fact, there is no split of authority, and that the relevant rules of law are these:

1. If a landlord converts a tenant's on-premises personal property while a tenant has the right to possess the premises, the measure of damages is the "in-place" fair market value of the converted property.

2. If a landlord converts a tenant's personal property left on the premises after the tenant's right to possession

has ended, the measure of damages is the fair market value that the property would have, if removed from the premises.

Our study of the Oregon precedents begins with *Blake-McFall Co. v. Wilson*, 98 Or 626, 193 P 902 (1921). That case involved a claim for the landlord's conversion of a tenant's elevator.[3] The landlord sold the building, including the elevator, while the lease was in effect. This constituted a conversion. The court held that the tenant was entitled to damages for the in-place value of its elevator.

On the other hand, in *Swank v. Elwert*, 55 Or 487, 105 P 901 (1910), this court held that a tenant who had defaulted on the lease payments and who had been lawfully "dispossessed" was entitled to damages for the sale price of the goods after removal, not for their value as used in that building.

"[P]laintiff's lease was terminated by the re-entry of the lessor, because of her default in payment of rent, so that she was not entitled to the continued use of the property in connection with the building * * *. The true measure of damages was therefore the sale price of the goods. * * * [I]t was error to permit proof of a value for a particular use in a particular building." 55 Or at 499-500.

These two cases suggest that the measure of damages turns on when the landlord's conversion occurred. If the conversion of a tenant's personal property on the premises occurs when the tenant has a right to possession of the premises, the measure of damages is the in-place fair market value. *Blake-McFall Co. v. Wilson, supra*, 98 Or at 648. If the conversion of personal property left on the premises occurs after the lease has ended or after the tenant's right to possession of the premises has ended, the measure of damages is the fair market value of the property after removal. *Swank v. Elwert, supra*, 55 Or at 500.

Decisions from other jurisdictions confirm the legal significance of this distinction. Cases upholding the "in-place" measure of damages generally involve a conversion during the term of the lease or a wrongful termination of the

---

[3] Although the elevator was not "physically detached" from the building, the parties "agreed to treat" it as personal property. *Blake-McFall Co. v. Wilson*, 98 Or 626, 643, 193 P 902 (1921).

lease by the landlord. In *Independence Flying Service, Inc. v. Ailshire*, 409 SW2d 628, 629 (Mo 1966), for example, the landlord, who was "guilty of conversion in re-entering and forcibly excluding [the tenant] from the premises," was held liable for the in-place value of the property converted. In *Smyth v. Stoddard*, 203 Ill 424, 67 NE 980 (1903), the tenant erected stalling and a covering on a barn foundation, retaining the right to remove the improvements at the end of the lease. The landlord sold the premises to a third person during the term of the lease. "The [landlords], having sold the barn with the farm, and thus put it out of their power to permit the [tenant] to remove the structure, were properly regarded as having received the value of the barn from the purchaser of the farm and converted the same to their own use, and hence liable to pay for the value of the barn as it stood — not its value as torn down for removal." 67 NE at 982.

Decisions holding that the measure of damages is the fair market value of the personal property after its removal from the premises generally involve conversion occurring after the expiration of the lease or after the tenant's right to possession of the premises has ended. For instance, in *Stein v. McDonald*, 149 So 2d 77 (Fla App 1963), the tenant had departed the premises and claimed damages for the landlord's refusal to permit the tenant to remove personal property from the leased premises. The court held that its value after removal was the proper measure of damages. *Id.* at 78. In *I. Tanenbaum Son & Co. v. C. Ludwig Baumann & Co.*, 261 NY 85, 184 NE 503 (1933), the plaintiff, a sprinkler company, installed sprinklers in a building leased to a tenant. The plaintiff retained title to the sprinklers. The defendant thereafter lawfully came into possession of the premises and refused the plaintiff's demand for possession of the sprinklers. The court held that the measure of damages was the value of the sprinklers removed. 184 NE at 504-05.

Likewise, the treatises state the same rule. 2 Friedman on Leases 1293, § 24.2 (3d ed 1990), states:

> "A landlord who refuses to permit a tenant to take his removable fixtures at the end of the term is liable to the tenant for the value of the fixtures as used property, i.e., in their dismembered state, rather than their value in place,

because this is their maximum value to tenant if removal had been permitted."

4 Sutherland, Damages 4231, § 1114 (4th ed 1916), states:

"[W]hen the property so in place can no longer be there used by the owner and he is subject to summary removal its value will be estimated in case of conversion with reference to these facts; it will be estimated with reference to the condition in which the property will be when removed or as subject to the obligation or necessity of removal."

The rules make sense. If the landlord's conversion occurs at a time when the tenant has a right to possession of the premises, the landlord is depriving the tenant of the use "in place" and, if the tenant may sublet or assign, of the right to sell the personal property to others "in place." These rules also comport with the primary principle of compensatory damages, which is to put the injured party in the same position that he or she would have occupied had no tort been committed. *United Engine Parts v. Ried*, 283 Or 421, 432, 584 P2d 275 (1978). Had the defendants removed the property from the premises before December 31, 1988, as they could have done, they would have received, had they opted to sell the property, the fair market value of the property "after removal." The jury's award placed the defendants in the position that they would have occupied had they timely removed the property.

In conclusion, we hold that when a landlord converts a tenant's personal property left on the premises after the tenant's right to possession of the premises has ended, the measure of damages for the conversion is the fair market value of the personal property after removal. Therefore, the trial court's jury instruction that the measure of damages for the conversion of the equipment left on the premises was the fair market value of the equipment after removal was a correct statement of the law.[4]

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed.

---

[4] Neither party has raised any issue as to whether the costs of removal should be considered in calculating damages. Therefore, we do not consider that issue.