Argued and submitted December 2, 1991, reversed and remanded for further proceedings November 18, 1992

In the Matter of the Petition of
BRUER'S CONTRACT CUTTING,
*Petitioner,*

*v.*

The Filings of the
NATIONAL COUNCIL ON
COMPENSATION INSURANCE
and SAIF Corporation,
*Respondents.*

(89-03-16; CA A68831)

841 P2d 690

Ronald B. Terzenbach, Eugene, argued the cause for petitioner. With him on the brief were Daniel M. Holland and Loomis & Holland, Eugene.

Peter A. Ozanne, Portland, argued the cause for respondent National Council On Compensation Insurance. With him on the brief was Schwabe, Williamson, Wyatt, Portland.

Michael O. Whitty, Salem, argued the cause for respondent SAIF Corporation. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Petitioner seeks review of a Department of Insurance and Finance (DIF) final order requiring petitioner to pay additional workers' compensation premiums. The order concluded that SAIF is not estopped from collecting the extra premiums. We reverse and remand.

SAIF contends that petitioner should pay the additional premiums, because petitioner erroneously failed to include truck rent in calculating its employees' wages. Wages affect the workers' compensation insurance premium. Petitioner paid its employees a salary and $20 per day as truck rent, because they often drove up to 50 miles in their own vehicles to reach work sites. Petitioner paid the rent regardless of the loggers' actual expenses, which an industry expert estimated at about $30 daily, and regardless of whether they drove their own trucks or shared rides.[1] It kept separate records for wages and truck rent. Petitioner excluded the truck rent from salary when calculating its workers' compensation premium. SAIF had informed petitioner that the practice was permissible but reversed its position after a premium audit and assessed an additional premium for April 1, 1986, through March 31, 1988.

We determine two preliminary matters before proceeding to the merits. First, relying on ORS 183.460,[2] petitioner assigns error to DIF"s failure to issue a proposed order before issuing a final order. In *Bob Wilkes Falling v. National Council on Comp. Ins.*, 108 Or App 453, 455, 816 P2d 1172, *rev den* 312 Or 527 (1991), we held that ORS 183.460 did not require an agency to issue a proposed order before issuing a final order, so long as the issuer has reviewed the entire

---

[1] Petitioner testified that he chose $20 on the basis of estimates that each worker drove his own truck 60 percent of the time.

[2] ORS 183.460 provides:

"Whenever in a contested case a majority of the officials of the agency who are to render the final order have not heard the case or considered the record, the order, if adverse to a party other than the agency itself, shall not be made until a proposed order, including findings of fact and conclusions of law, has been served upon the parties and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision."

record. The final order here states that its issuer had reviewed the record. That satisfies ORS 183.460.

■     Second, in a cross-assignment of error, respondents argue that DIF erred in ruling that issue preclusion does not bar it from considering whether SAIF is estopped from claiming that truck rent should be included in the payroll. DIF had determined in a 1988 order that truck rent should be included as compensation when calculating petitioner's premium. We reject the argument for two reasons. First, in *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990), the court said that

> "issue preclusion * * * precludes future litigation on a subject issue only if the issue was 'actually litigated and determined' in a setting where 'its determination was essential to' the final decision reached."

The parties did not litigate, and DIF did not determine, petitioner's estoppel claim in the 1988 proceeding.

Second, *Drews* held that a "statutory scheme of remedies may expressly contemplate that successive proceedings may be brought, notwithstanding the finality of the first proceeding." 310 Or at 143. DIF reviewed ORS 737.318[3] and concluded:

---

[3] ORS 737.318 provides, in part:

"(1) A workers' compensation insurer *shall maintain* a premium audit program to aid in achieving equitable premium charges to Oregon employers and for the collection of credible statewide data for ratemaking.

"(2) The director shall prescribe by rule a premium audit program system for workers' compensation insurance.

"(3) The premium audit system shall include provisions for:

"* * * * *

"(b) A continuing test audit program providing for auditing of all insurers;

"(c) A continuous monitoring of the audit program system pursuant to ORS 737.235;

"(d) An appeal process pursuant to ORS 737.505 for employees to question the results of a premium audit; and

"(e) Civil penalties pursuant to ORS 731.988 for violations of prescribed standards of the premium audit system.

"(4) Notwithstanding ORS 737.505, the provisions of this section apply to all premium audit disputes between employers and insurers in existence on July 20, 1987, regardless of the policy year involved or the date of the final audit billing." (Emphasis supplied.)

"The statutory language does not specifically provide for successive hearings on the same issue, but the language does imply that such hearings were contemplated at the time of legislative enactment. The insurer's mandate that it *maintain* a premium audit program, that the program be *continuing*, and that the purpose of the program be the achievement of equitable premium charges to employers, furnishes a clear inference that the Legislature intended that the employer retain the right to appeal the results of audits for each policy year and each insurer.

"Additional evidence of the repetitive nature of the hearing right is the statement in ORS * * * 737.318(4) that all premium audit disputes in existence on July 20, 1987, regardless of the policy year involved or the date of billing, fall within the jurisdiction of the premium audit billing hearing process.

"Issue preclusion does not apply in the final premium audit billing appeal process." (Emphasis in original.)

We agree with DIF's interpretation. Issue preclusion does not prevent it from considering the estoppel claim.

■     Petitioner assigns error to DIF's conclusion that equitable estoppel does not bar SAIF from collecting the additional premium.[4] Petitioner first claims that DIF incorrectly included intentional fraud as an element of equitable estoppel. The elements of equitable estoppel were discussed in *Coos County v. State of Oregon, supra* n 4, 303 Or at 180:

"The elements of equitable estoppel in Oregon were set out by this court in *Oregon v. Portland Gen. Elec. Co.*, 52 Or 502, 528, 95 P 722 (1908):

" 'To constitute estoppel by conduct there must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party;

---

[4] *Coos County v. State of Oregon*, 303 Or 173, 181, 734 P2d 1348 (1987), says:

"We have recognized that an estoppel may be raised against government entities, subject to certain specific limitations."

No party contends that estoppel may not be raised against SAIF because it is a government entity or was performing a government function at the time of its representations and we do not decide those issues. SAIF acknowledges: "In matters involving audit and assessment of premium, SAIF's authority is no different from that of a private carrier."

(5) the other party must have been induced to act upon it: Bigelow, Estoppel (5 ed.), 569, 570.'

"Courts generally have held that the misrepresentation must be one of existing material fact, and not of intention, nor may it be a conclusion from facts or a conclusion of law. Everest and Strode, The Law of Estoppel 251 (3d ed 1923). The party seeking estoppel must demonstrate not only reliance, but a right to rely upon the representation of the estopped party. *Marshall v. Wilson*, [175 Or 506, 518, 154 P2d 547 (1944)]. Reliance is not justified where a party has knowledge to the contrary of the fact or representation allegedly relied upon. *Willis v. Stager*, 257 Or 608, 619, 481 P2d 78 (1971). The facts creating an estoppel must be proved by a preponderance of the evidence. *McKinney v. Hindman*, 86 Or 545, 551, 169 P 93 (1917)."

Fraud is not an element of equitable estoppel, and the record does not indicate that DIF required petitioner to prove fraud.

■        Petitioner also argues that substantial evidence does not support DIF's conclusion that petitioner failed to establish the knowledge element of equitable estoppel, *i.e.*, that SAIF knew that the flat expense allowance was subject payroll. The order says:

"*No evidence was received* indicating that SAIF had knowledge that Petitioner's flat expense allowances were not eligible for exclusion from subject payroll. *No evidence was received* that SAIF was aware of the method by which Petitioner had calculated the flat expense allowances or how Petitioner paid this allowance prior to the time of the final premium audit. Accordingly, Petitioner failed to prove its equitable estoppel theory because it failed to prove Respondent acted with knowledge of the fact that its flat expense allowance was subject payroll." (Emphasis supplied.)

We review for substantial evidence to support DIF's findings. ORS 183.482(8)(c). Petitioner contends that, contrary to DIF's language, it offered extensive evidence of SAIF's knowledge.[5] Respondents argue that DIF could have

_____

[5] We summarize petitioner's evidence: Bennett, SAIF's former audit manager, testified that he knew that petitioner's former insurers had permitted the exclusion; that, in May or June, 1985, he told Bruer, one of petitioner's owners, that SAIF would allow the exclusion; that he had reviewed petitioner's books, knew how it calculated and paid the truck allowance and had told petitioner that the method satisfied SAIF; that he upheld the truck rent policy, because he felt that SAIF had received a fair premium and that he sent a letter to petitioner's owner confirming the

disbelieved the evidence because the witnesses, who were company officials and a former SAIF employee, were biased and SAIF rebutted their testimony.

Petitioner is correct that it introduced evidence sufficient to support a finding that SAIF knew about petitioner's method of calculating the allowance and knew that the allowance was subject payroll and still approved the exclusion before the audit. We cannot tell from the order whether DIF disbelieved petitioner's evidence, because the order makes no credibility findings or other findings to support that inference. We cannot tell whether DIF meant only that petitioner failed to meet its burden of proof.

We faced a similar problem in *Rennick v. Jackson & Coker*, 95 Or App 72, 767 P2d 478 (1989), where the trial court, at the close of the evidence, struck a claim for lost profits on the ground that the evidence would support only speculation, not a finding of fact, on the issue. We concluded that there was sufficient evidence to support a finding and remanded, because we were unable to determine whether the court's action was correct:

> "Plaintiffs contend that the trial court ruled as a matter of law that their evidence was insufficient and that that was error because they offered some evidence that net profits would have been earned. *See Husky Lbr. Co. v. D.R. Johnson Lbr. Co.*, 282 Or 481, 487-88, 579 P2d 235 (1978); *see also VonRavensberg v. Houck-Carrow Corp.*, 60 Or App 412, 416-17, 653 P2d 1297 (1982). We agree with plaintiffs that there was sufficient evidence to permit a finding that some net profits would have resulted from the employment of a physician. We are unable to determine from the trial court's order whether it erroneously granted defendant's motion to strike as a matter of law or whether, sitting as factfinder, it was simply unpersuaded by the evidence. Because it is unclear, we remand for further proceedings." 95 Or App at 74.

Similarly, we cannot determine whether DIF rejected the evidence of SAIF's knowledge as a matter of law, whether DIF was simply unpersuaded by it or whether DIF erroneously overlooked it. ORS 183.482(8)(c) requires a

propriety of the truck rent exclusion so that petitioner would be protected if SAIF audited it. The owner corroborated Bennett's testimony about his representations.

remand to permit DIF to make findings about the issue of SAIF's knowledge. Depending on its findings on that and the other contested factual issues,[6] DIF may reach the same or a different ultimate finding on the estoppel claim and may adhere to or modify its present disposition, as it deems appropriate. ORS 183.470(2).

Reversed and remanded for proceedings not inconsistent with this opinion.

---

[6] Because we hold that DIF did not resolve the equitable estoppel issue, we do not reach the question of whether DIF correctly determined that truck rental should be included in payroll if equitable estoppel does not apply.