Argued and submitted February 22, reversed and remanded August 18, reconsideration denied October 27, petition for review denied December 7, 1993 (318 Or 170). Order denying review withdrawn, petition for review allowed January 18, 1994 (318 Or 325)

**PACIFIC FIRST BANK,**
a Federal Savings Bank,
*Respondent,*

*v.*

**NEW MORGAN PARK CORPORATION,**
a Delaware corporation,
*Appellant.*

(9010-06729; CA A71494)

857 P2d 895

James H. Clarke, Portland, argued the cause for appellant. With him on the briefs were Wayne Hilliard, David G. Hosenpud, Thomas W. Sondag and Lane Powell Spears Lubersky, Portland.

Joyce A. Harpole, Portland, argued the cause for respondent. On the brief were Barnes H. Ellis, Mary K. VanderWeele and Stoel Rives Boley Jones & Grey, Portland.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DURHAM, J.

Riggs, J., dissenting.

**DURHAM, J.**

Defendant appeals from a judgment declaring, in effect, that plaintiff is defendant's tenant. We reverse.

Defendant and Pacific First Federal Savings and Loan Association (Association) were parties to a lease that provided that Association could not assign its interest without defendant's prior written consent. On July 30, 1990, Association notified defendant that, on the next day, it intended to merge into plaintiff, which was Association's wholly owned banking subsidiary. Association asserted that it notified defendant because the merger, which would substitute plaintiff for Association as defendant's tenant, could be considered an assignment. Association requested that defendant promptly consent to the merger. Although defendant did not consent, the merger proceeded on July 31.

Defendant notified plaintiff that the merger was an assignment without consent, in breach of the lease. Plaintiff filed this action to obtain a judicial declaration that it became the tenant in compliance with the lease, and defendant counterclaimed to recover the property. The trial court declared that the merger did not require defendant's consent, that defendant was equitably estopped from denying that it gave consent, that a refusal by defendant to consent would be a breach of the implied covenant of good faith and fair dealing, and that any breach by Association in failing to obtain prior consent was technical and immaterial. Defendant assigns error to each alternative holding and to the dismissal of its counterclaim. We review *de novo* the issue of equitable estoppel. *Nedry v. Morgan*, 284 Or 65, 67 n 1, 584 P2d 1381 (1978). The parties submit, and we agree, that the other issues raise pure questions of law. *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978); *Southern Oregon Production Credit Assn. v. Patridge*, 71 Or App 53, 55, 691 P2d 135 (1984).

We combine for discussion defendant's assignments that the court erred in declaring that the merger was not an assignment that required consent, and that failure to obtain consent was not a material breach. The lease provides, in part:

"*Section 18.1   Definitions.* The cumulative (i.e., in one or more sales or transfers by operation of law or otherwise) transfer of an aggregate of 50% or more of the voting stock, including by creation of or issuance of new stock, of the corporation which is Tenant, or of any corporate assignee of Tenant, by which an aggregate of 50% or more of such stock shall be vested in a party or parties who are not stockholders as of the date hereof, shall be deemed an assignment of this Lease. * * * This Section 18.1, however, shall not apply to Pacific First Federal Savings and Loan Association so long as it is the Tenant hereunder.

"*Section 18.2   Assignment, etc.* Except as provided in Section 18.3, Tenant shall not assign, sell, mortgage, pledge, or in any manner transfer the Lease or any interest herein whether voluntary or involuntary or by operation of law, or sublet the Premises or any part or parts thereof, or permit occupancy of all or any part thereof by anyone with, through or under it, without the prior written consent of Landlord. * * *

"*Section 18.3   Permitted Subleases.* Landlord will not unreasonably withhold its consent to a sublease to a subtenant in the opinion of Landlord (i) with the financial worth and business background and experience necessary to enable it to perform its obligations under its sublease consistent with this Lease and (ii) whose personal identity and use of the subleased premises shall be compatible with the overall character, use and purposes of the Improvements as a whole as established by Landlord at the time of the sublease."

The merger agreement combined Association and plaintiff in a downstream merger, *i.e.*, the parent corporation, Association, merged into its subsidiary, plaintiff. That transaction is distinguishable from an upstream merger in which a parent corporation absorbs a subsidiary. The parties agree that the lease did not present an obstacle to an upstream merger because Association would continue as the tenant, and Section 18.1 permitted Association to freely reorganize its stock "so long as [Association] is the Tenant hereunder."

The trial court stated in a letter opinion that the downstream merger was distinguishable from an upstream merger in form only, because "the only difference in this 'downstream' merger is in the name of the surviving entity." It found "substantial evidence that the post-merger entity

was stronger financially than any of its predecessors (Tenant)." It also said:

> "In addition, Section 18.1 of the lease indicates an understanding on the part of Landlord that Tenant might, during the term of the lease, deem it appropriate to change or alter its structure and/or ownership and that this would not constitute an assignment."

■ The court's conclusion that the merger was not an assignment requiring consent is erroneous. The merger agreement provided, in part:

> "[A]ll assets and property * * * then owned by [Association] * * * shall immediately by operation of law and without any conveyance, transfer, or further action, become the property of [plaintiff] * * *."

Plaintiff does not dispute that the merger transferred Association's stock and its interest in the lease to plaintiff. Association ceased to exist and plaintiff became the tenant. Section 18.1 of the lease exempted certain stock transfers by Association from the assignment restriction in Section 18.2 "so long as [Association] is the Tenant hereunder." The court's suggestion that the parties agreed in Section 18.1 that changes in Association's structure or ownership would not constitute an assignment is incorrect, because that clause applies only if Association continues as the tenant. That requirement is not affected by plaintiff's superior financial strength, its continuation of Association's business operation, or by the fact that Association could have achieved roughly the same business combination in an upstream merger.

■ We also conclude that Association's failure to secure consent was a material breach.

> "A breach is material if it goes to the very substance of the contract and defeats the object of the parties in entering into the contract." *McKeon v. Williams*, 104 Or App 106, 109, 799 P2d 198 (1990), *aff'd* 312 Or 322, 822 P2d 699 (1991).

The trial court concluded that any failure to secure consent was "technical and immaterial" because there was no substantive change in the tenant or any increased risk that defendant would not receive what it had bargained for.

For the reasons stated, we conclude that there was a substantive change in the tenant. We also conclude that the assignment without consent deprived defendant of an important contractual right. Section 18.3 of the lease provides that defendant "will not unreasonably withhold its consent to a sublease to a subtenant" under specified conditions. However, Section 18.2 prohibits an assignment "without the prior written consent of Landlord." The assignment clause does not require defendant to be reasonable in withholding consent. The difference in terminology indicates that the parties intended to create a right in defendant to grant or withhold consent to an assignment at its sole discretion. Because Association assigned its lease without consent, the merger defeated one of the parties' objectives in entering into the lease. The breach was material.

■ Defendant assigns error to the court's alternate conclusion that it was obligated to consent to the assignment by the implied duty of good faith and fair dealing in the lease. The authorities are in conflict as to whether that duty controls the manner of exercising rights granted, expressly or impliedly, to one contracting party. *Compare Comini v. Union Oil Co.*, 277 Or 753, 562 P2d 175 (1977), *and City of Portland v. George D. Ward & Assoc.*, 89 Or App 452, 457, 750 P2d 171, *rev den* 305 Or 672 (1988), *with Tolbert v. First National Bank*, 312 Or 485, 492, 823 P2d 965 (1991), *and Sheets v. Knight*, 308 Or 220, 233, 779 P2d 1000 (1989). However, we do not accept the parties' invitation to decide, on the basis of these and other conflicting authorities, whether defendant had an implied obligation to refuse consent to the assignment only for a commercially reasonable purpose. We are bound by what the Supreme Court said in *Abrahamson v. Brett*, 143 Or 14, 22, 21 P2d 229 (1933):

> "Where a subletting or assignment of the leased premises without the consent of the lessor is prohibited, [the lessor] may arbitrarily withhold his assent without giving any reasons, and in granting his assent may impose such conditions as he sees fit."

■ Plaintiff contends that that statement in *Abrahamson* is dictum. We disagree. In *Abrahamson*, a landlord claimed back rent from two tenants under a lease that permitted assignments with the landlord's consent. The landlord

had consented to an assignment of the lease to a third party but had attached a condition to the consent that the assignment would not release the original tenants from the obligations of the lease. The court held that the condition was valid. Although the court did not make the statement quoted above in the context of an unconsented assignment, it did hold that the lease entitled the landlord to "impose such conditions as he sees fit" on a consent to assignment. That right necessarily includes the power to withhold consent altogether unless and until the landlord wishes to consent. Both the holding and reasoning of *Abrahamson* conflict with the trial court's result.

Plaintiff also contends that *Abrahamson* is 60 years old and does not reflect the trend in a minority of jurisdictions that require a landlord to act reasonably in withholding consent to an assignment. *See, e.g., Kendall v. Ernest Pestana, Inc.*, 40 Cal 3d 488, 220 Cal Rptr 818, 709 P2d 837 (1985). The age of *Abrahamson* is beside the point. It has not been overruled or questioned by the Oregon Supreme Court. Until that court or the legislature changes it, *Abrahamson* supports defendant and binds us.

Defendant contends that the court erred in holding that it is estopped from denying that it consented to an assignment. The trial court held that defendant was estopped because it knew of Association's need for an immediate reply, because Association supplied information regarding the assignment by facsimile and offered to supply any other information that defendant might find necessary, and because one of defendant's agents expected others working for defendant to contact Association regarding the delay in responding.

██ Equitable estoppel by conduct requires a false representation of an existing material fact, and not of intention, by a party with knowledge of the facts, and with the intention that it should be acted upon by the other party. In addition, the other party must be ignorant of the truth and must have been induced to act upon the representation. *Bruer's Contract v. Natl. Council on Comp. Ins.*, 116 Or App 485, 489, 841 P2d 690 (1992). None of the elements of equitable estoppel was established here. Defendant never represented to Association that it consented to the merger. Its knowledge of

Association's need for a speedy reply to the request for consent, and its statements assuring a prompt reply do not amount to consent. Association did not change its position in reliance on defendant's statements, and had no right to do so. On *de novo* review, we reject the equitable estoppel claim.

Defendant assigns error to the court's admission of an exhibit to which defendant objected on relevance grounds. We reject the assignment without discussion.

Defendant asks that we remand for entry of a judgment on its counterclaim to recover the property. We remand to permit the trial court to consider that question.

Reversed and remanded.

**RIGGS, J.,** dissenting.

The majority acknowledges that the authorities are in conflict concerning whether the duty of good faith and fair dealing controls the manner in which contractual rights are exercised. Among these conflicting authorities, the majority chooses to rely on language in *Abrahamson v. Brett*, 143 Or 14, 21 P2d 229 (1933), which we described as a *dictum* in *Chiles v. Robertson*, 94 Or App 604, 629, 767 P2d 903, *rev den* 308 Or 592 (1989). Although it was unnecessary to directly review the rule of *Abrahamson* in *Chiles, Chiles* strongly implies that the rule of *Abrahamson* has been superseded by the rule requiring good faith in the performance and enforcement of *all* contracts. *See, e.g., Best v. U.S. National Bank*, 303 Or 557, 561, 739 P2d 554 (1987). Because the broad language of *Best* cannot be reconciled with the holding of *Abrahamson*, I believe that the Supreme Court would overrule *Abrahamson* if squarely presented with the issue today.

Anti-assignment clauses protect a landlord from assignment of a lease to a less desirable tenant. Here, the new tenant was, for all practical purposes, the old tenant. Landlord's refusal to consent to a transfer from the original tenant to a nearly identical entity breached the covenant of good faith and fair dealing. A simple desire to *improve* one's position is not a reasonable ground to refuse consent to an assignment. *Chiles v. Robertson, supra*, 94 Or App at 631.

There is a nationwide trend to require landlords to act reasonably in connection with consents to assignment or

sublease. *See, e.g., Campbell v. Westdahl*, 148 Ariz 432, 715 P2d 288 (1985); *Boss Barbara, Inc. v. Newbill*, 97 NM 239, 638 P2d 1084 (1982). The modern rule is also embodied in the *Restatement (Second) Property* § 15.2(2) (1977). Oregon courts have previously followed the *Restatement (Second) Property. See, e.g., Sunset Fuel & Engineering Co. v. Compton*, 97 Or App 244, 775 P2d 901, *rev den* 308 Or 466 (1989). Section 15.2(2) provides:

> "A restraint on alienation withhout the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent."

The lease in this case does not include a provision granting the landlord an absolute right to withhold consent. We should not imply one.

When we come to a fork in the road, we need not, like Robert Frost, "take the road less travelled by." We should take the better road. Here, the better road is to follow the modern trend represented by *Best* and the *Restatement*.

I dissent.