Argued and submitted November 10, 1987, judgment notwithstanding verdict reversed; order denying motion for new trial affirmed; remanded for reinstatement of jury verdict and for entry of judgment November 25, 1987, reconsideration denied January 15, petition for review denied February 17, 1988 (305 Or 103)

# HILLSTROM,
*Appellant,*

*v.*

# McDONALD'S CORPORATION,
*Respondent.*

(A8204-02262; CA A33226)

746 P2d 222

Robert D. Scholz, Portland, argued the cause for appellant. With him on the briefs were William P. Buck and MacMillan & Scholz, P.C., Portland.

Mark L. Cushing, Portland, argued the cause for respondent. With him on the brief were Barbee B. Lyon, and Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

■    Plaintiff, a franchisee of defendant McDonald's Corporation, appeals the trial court's grant of judgment notwithstanding the verdict in an action for breach of contract. Because we hold that plaintiff introduced sufficient evidence at trial to warrant a jury's determination, we reverse. We affirm the trial court's refusal to grant McDonald's motion for a new trial.[1]

Plaintiff was an owner-operator of two McDonald's franchises located in Portland and Tigard. He purchased the Portland franchise in 1974. By 1978, sales at the Portland franchise had nearly doubled, and it had won an award for performance. In 1978, he purchased the Tigard franchise. In 1979 and 1980, sales at the Tigard restaurant exceeded Portland area averages. During 1975-79 he received consistently good restaurant and operator evaluations at both restaurants from McDonald's. In 1980, he decided to sell the two franchises; later that year he sold the Portland restaurant to McDonald's, but he was unable to sell the Tigard restaurant until 1983. Sales at the Tigard restaurant leveled off in 1981 and declined in 1982 and 1983. At the same time, the operation's quality, as rated by McDonald's, remained the same.

In anticipation of the sale of the two franchises, in August, 1980, plaintiff resigned from a regional advertising cooperative (co-op). The co-op was a voluntary organization of local Portland-area McDonald's franchise owners formed to pool advertising money. McDonald's did not sponsor the organization but regularly presented information at its meetings. Plaintiff maintained his membership in OPNAD, a nationwide franchise holders' organization which was responsible for national advertising programs. After he withdrew from the co-op, he requested that McDonald's mail directly to

---

[1] At trial, McDonald's moved for judgment notwithstanding the verdict and, in the alternative, a new trial pursuant to ORCP 63C. It did not formally cross-appeal the denial of a new trial but was not required to do so under ORS 19.130(2):

"Where in the trial court a motion for judgment notwithstanding the verdict and a motion for a new trial were made in the alternative and an appeal is taken from a judgment notwithstanding the verdict or an order granting a new trial, the court to which the appeal is made may consider the correctness of the ruling of the trial court on either or both motions if such ruling is assigned as erroneous in the brief of any party affected by the appeal, without the necessity of a cross-appeal."

him *all* national marketing advertising and promotional materials. He received some material in the mail from McDonald's, but he did not receive everything that co-op members received. In July and September, 1981, he again requested the material, only some of which he received. He tried to attend the portions of co-op meetings at which McDonald's gave presentations, but was barred from doing so by co-op members. In December, 1981, he applied to rejoin the co-op but, when he refused to pay the 1981 advertising assessment of $27,000, he was refused admission.

In 1982, plaintiff brought this breach of contract action, alleging that McDonald's had breached paragraph 3 of the franchise contract:

> "Licensor shall advise and consult with licensee periodically in connection with the operation of the restaurant and also, upon Licensee's request, at other reasonable times. Licensor shall communicate to Licensee its know-how, new developments, techniques and improvements in areas of restaurant management, food preparation, and service which are pertinent to the operation of a restaurant using the McDonald's System. The communications shall be accomplished by visits by Field Consultants, printed and filmed reports, seminars, and newsletter mailings. Licensor shall also make available to Licensee all additional services, facilities, rights and privileges which Licensor makes generally available, from time to time, to all its licensees operating McDonald's restaurants."

He alleged that McDonald's failed to provide him with appropriate communications and information[2] and that, as results of the breach, he had suffered lost profits of $121,365 and the value of the Tigard restaurant had been reduced by $155,000.

---

[2] In his complaint plaintiff maintained that the information McDonald's failed to provide included:

"Promotional programs and activities developed by McDonald's Corporation;

"Financial information and projections relating to existing and future McDonald's operations;

"New product and equipment information and training for the integration of new products into the operator's food service offerings;

"Operational up-grading and suggested improvements in daily operational methods;

"Information relating to the expansion of existing McDonald's franchises and the location and planning of new McDonald's restaurants;

"Information regarding real estate matters, construction and remodeling."

After trial, the jury awarded plaintiff $47,083.33 in lost profits and $6,250 for diminution in the restaurant's value. The trial court granted McDonald's motion for judgment notwithstanding the verdict. The court held that there was evidence that some of the required material was not transmitted or was delayed in reaching plaintiff, but that he had failed to introduce sufficient evidence to establish a causal link between the "information gap" and the decline in sales and the value of the restaurant.[3] The court denied McDonald's alternative motion for a new trial.

■ Judgment notwithstanding the verdict is not appropriate if there is any evidence to support the verdict. *Jacob v. Tidewater Barge Lines,* 277 Or 809, 811, 562 P2d 545 (1977). In determining whether there is evidence to support the verdict, we review the evidence in the light most favorable to the nonmoving party. *Huston v. Trans-Mark Services,* 45 Or App 801, 609 P2d 848, *rev den* 289 Or 587 (1980). In an action for lost profits, the plaintiff must prove that profits were lost and that there was a causal connection between the defendant's action and the lost profits. *Buck v. Mueller,* 221 Or 271, 282, 351 P2d 61 (1960).

■ The lost profits and causal connection must be proved with "reasonable certainty," the meaning of which was discussed in *Welch v. U.S. Bancorp,* 286 Or 673, 704, 596 P2d 947 (1979):

"The real use of the term reasonable certainty seems to be to screen out an issue from the jury when the court has concluded that the evidence, taken as a whole, is clearly insufficient to establish the fact sought to be proved. The courts should be just as wary here in exercising the screening process as in negligence cases. To paraphrase, the court should intervene only when it can say that the evidence is *clearly insufficient* to establish the claim of lost profits. This does not mean that the court should withdraw the question just because the court might not be convinced by the evidence. Compare *Wootten v. Dillard,* 286 Or 129, 592 P2d 1021 (1979). If reasonable men could be persuaded of the validity of the claim

---

[3] Plaintiff argued at trial that McDonald's had breached the agreement by failing to advise and consult with him. The trial court struck the claim on the basis that there was no evidence to support it, and that ruling is not assigned as error. Plaintiff also withdrew his claim that McDonald's had breached the agreement by failing to provide information relating to competitors' food service operations.

on the evidence presented, the jury must be allowed to make the decision." (Citations omitted; emphasis in original.)

*See VonRavensburg v. Houck-Carrow Corp.*, 60 Or App 412, 653 P2d 1297 (1982).

■　　Plaintiff produced evidence that he did not receive information that was made generally available by McDonald's to other franchisees. He testified that the Tigard restaurant's decline in gross revenues was due in part to his failure to receive the information, citing several examples. He testified that, during much of 1981, he received little or no introductory and follow-up materials regarding national marketing and advertising, which prevented him from effectively participating in national promotions. Additionally, he testified that his failure to receive timely follow-up and price information regarding new products prevented him from effectively marketing the products. He also presented evidence that, in 1979 to 1980, before McDonald's alleged breach of paragraph 3, sales at the Tigard restaurant were above average but that, after the alleged breach, sales were below average. That evidence was not clearly insufficient to prevent the jury from inferring with reasonable certainty a causal connection between McDonald's breach and plaintiff's damages. The fact that the evidence was not as strong as it could have been is not an adequate reason to withdraw it from the jury.

■　　Plaintiff's evidence on lost profits also was not clearly insufficient to establish with reasonable certainty the existence of lost profits. At trial, his expert witness projected gross revenues for the Tigard restaurant for 1981 to 1983 on the basis of its previous annual profit margins and the gross revenues of the other Portland area McDonald's restaurants at the time of the breach. Another expert witness then calculated fixed and variable costs for running the Tigard restaurant during 1981, 1982 and the first five months of 1983 to arrive at projected actual revenues. He then compared the actual versus the projected gross revenues, translating the difference into the expected lost profits and reduction in values for the years 1981 to 1983. Similar projections of future profits based upon data regarding production capacity, previous annual profit margins and industry standards have been held sufficient to support an award of lost profits. *See, e.g., Hardwick v. Dravo Equipment Company*, 279 Or 619, 569 P2d

588 (1977); *Lawrence v. Underwood,* 81 Or App 533, 726 P2d 1189 (1986); *VonRavensburg v. Houck-Carrow Corp., supra.*

■     McDonald's argues that, because plaintiff did not explain how the absence of each piece and type of information he claims not to have received affected his business and resulted in a certain amount of lost profits, he did not adequately prove causation or the existence of lost profits. However, plaintiff did not plead that the lack of specific information resulted in specific identifiable losses. Rather, he alleged generally that the failure to receive the types of information identified in his complaint resulted in the total amount of damages. The jury was instructed, and defendant did not object, that plaintiff's burden was to prove that the contract was breached in at least one of the respects alleged in the complaint. Further, in view of the difficulty of isolating the financial impact of each piece of information that was not received, the evidence presented by plaintiff was adequate. *See Welch v. U.S. Bancorp,* 286 Or 673, 705, 596 P2d 947 (1979). Accordingly, we reverse the judgment notwithstanding the verdict.[4]

■     McDonald's next contends that the trial court erred in denying its motion for a new trial pursuant to ORCP 64. It argues that the judge decided as a matter of law that paragraph 3 of the agreement applies only to information made "generally available" to *all* McDonald's franchisees, not just the franchisees in a particular market area. McDonald's argues that, because plaintiff failed to prove that the information he claims he should have received was made "generally available" to *all* franchisees, the court erred in submitting the claims to the jury. ORCP 64(B)(6).[5] The trial court did decide

---

[4] McDonald's argues that, if we hold that there was insufficient evidence on any of the claims submitted to the jury, we must grant a new trial to recalculate the damages. However, we hold that plaintiff presented sufficient evidence for the jury to calculate lost profits and that he was not required to itemize the lost profits for each type of information not received.

[5] ORCP 64(B) provides:

"A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such parties:

"* * * * *

"B(6) Error in law occurring at the trial and objected to or excepted to by the party making the application."

that the information must have been made "generally available" to *all* franchisees in order to invoke the requirement under paragraph 3 that plaintiff receive it.[6] However, plaintiff produced evidence that some of the information which he did not receive was made "generally available" to *all* franchisees. Some of the information was the same information that he used to prove causation. Because the failure to receive any of the information could result in a breach, and because there was evidence of damages, the trial court did not err in submitting the claims to the jury.

Judgment notwithstanding the verdict reversed; order denying motion for new trial affirmed; remanded for reinstatement of jury verdict and for entry of judgment.

---

[6] During trial, the judge interpreted the third clause of paragraph 3, reading

"Licensor shall also make available to licensee all additional services, facilities, rights and privileges which licensor makes generally available from time to time to all its licensees operating McDonald's restaurants"

to mean that McDonald's was obligated to provide plaintiff information which was

"generally made available to all McDonald's franchisees, not limited to the trading area."

The jury was instructed that this language meant that defendant was required to provide those items to plaintiff which were provided to all franchisees in the system.