Argued and submitted October 16, 1987, affirmed on appeal and cross-appeal February 10, Amwest Surety Ins. Co.'s reconsideration and Alternative Sewage Mgt. Inc.'s reconsideration denied April 22, both petitions for review denied May 24, 1988
(305 Or 672)

CITY OF PORTLAND,
*Plaintiff,*

AMWEST SURETY INSURANCE COMPANY,
*Appellant - Cross-Respondent,*

*v.*

GEORGE D. WARD & ASSOCIATES, INC., et al,
*Respondents - Cross-Appellants,*

AMWEST SURETY INSURANCE COMPANY,
*Defendant,*

*and*

AMWEST SURETY INSURANCE COMPANY,
*Third-Party Plaintiff -*
*Appellant - Cross-Respondent,*

*v.*

WARD et al,
*Third-Party Defendants -*
*Respondents - Cross-Appellants.*

(A8401-00218; CA A40656)

750 P2d 171

Jan D. Sokol, Portland, argued the cause for appellant-cross-respondent. With her on the briefs were H. Lee Cook, and Stafford, Frey & Mertel, Portland.

James N. Westwood, Portland, argued the cause for respondents - cross-appellants. With him on the briefs were John D. Burns, P. Conover Mickiewicz, and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

.

---

* Joseph, C. J. *vice* Young, J., deceased.

## VAN HOOMISSEN, J.

City of Portland (City) brought this action against George D. Ward and Associates, Inc., and Alternative Sewage Management, Inc. (Management), for breach of a contract to dispose of sludge from sewage treatment plants and against Amwest Surety Insurance Company (Amwest) for recovery on a bond issued by Amwest assuring Management's performance of the contract. Amwest denied liability, cross-claimed against Ward and brought a third-party claim against the individual Wards (third-party defendants), on the indemnity agreement. Ward counterclaimed against City for breach of contract. Ward and third-party defendants each asserted a cross-claim or counterclaim against Amwest for attorney fees. Amwest assigns error to the trial court's refusal to give a proposed jury instruction and to the court's denials of motions for directed verdict. Management and the individually named third-party defendants (Wards) cross-appeal an award of attorney fees to Amwest under a separate indemnity agreement between them. We affirm.

In October, 1982, City accepted Management's bid to haul and to dispose of waste-water sludge from City's sewage plants. The contract was not signed by all the parties until January 24, 1983. City contracted to deliver sludge at a specified average rate, and Management promised to accept and haul the sludge at that rate. Management intended to process the sludge to make fertilizer. The contract required Management to obtain and meet the requirements of a Department of Environmental Quality (DEQ) solid waste disposal permit and recited Management's and City's obligations to dispose of the sludge in accordance with City's federal disposal permit. The contract further provided that if, in City's or DEQ's judgment, Management was violating the DEQ permit, City could, after 72 hours' notice, suspend delivery of sludge until the violation was corrected. In an emergency, City could suspend immediately after notice to Management or to its truck hauler. Management promised to provide backup hauling operations if its regular methods failed and to pay any expense that City might incur if it were required to undertake Management's performance. The contract also required that Management obtain a performance bond, which it did, from Amwest, in the amount of $213,000. Management and the Wards

agreed to indemnify Amwest for any payments made under the bond.

City required Management to begin hauling on January 24, 1983, although Management had not finished construction of the facilities needed to receive the sludge. Management began hauling on that date, believing that it could initially apply the sludge agronomically, as fertilizer for trees to be planted at the site, without violating the DEQ permit. On January 27, 1983, DEQ notified Management that its operations were in violation of its permit and told Management not to continue using the dumping site. DEQ notified City and mentioned City's obligation to comply with its federal permit. City immediately suspended delivery of sludge after notifying Management's truck hauler by letter and sending a copy to Management. During the next week, Management was unable to get an alternative site. City refused Management's request for an additional 60 days to reinstitute hauling. It notified Management on March 3, 1983, that it considered Management in default and tendered performance to Amwest.

After unsuccessful attempts to relet the contract, City undertook performance itself and filed this action. Management counterclaimed against City for breach of contract. Amwest cross-claimed against Management and brought a third-party claim against the Wards on the indemnity agreement. Management and the Wards asserted claims against Amwest for attorneys fees. Before trial, Amwest settled with City, assumed liability on Management's counter-claim and accepted assignment of City's claim against the Wards.

A jury awarded $1.00 on City's contract claim against Management, Management $120,171.43 on its contract claim against City, and Amwest $80,000 on its cross-claim against Management and the Wards on the indemnity agreement. The trial court entered net judgment against City and Amwest and also allowed Amwest attorney fees pursuant to the indemnity agreement. Amwest appeals. Management and the Wards cross-appeal the award of attorneys fees.

As an affirmative defense to Amwest's claims on the indemnity agreement, Management and the Wards alleged that Amwest breached its covenant of good faith in performance of its right, provided in the indemnity agreement, to

settle claims against Management. Amwest assigns error to the trial court's refusal to instruct the jury as follows:

> "Amwest is entitled to recover from [the Wards] under the General Indemnity Agreement for all sums paid to the City unless you find Amwest acted fraudulently or in bad faith. Bad faith is more than bad judgment, negligence or lack of diligence. In order to find bad faith, you must find Amwest acted for dishonest purposes or improper motives."

Amwest also moved for a directed verdict, arguing that the instruction was a correct statement of law and that Management had failed to prove that Amwest acted for dishonest purposes or with improper motives. The motion was denied. Amwest assigns error to the denial of its motion.

The preliminary issue raised by all three assignments of error is whether the proposed instruction is an accurate statement of Oregon law. In support of its requested instruction, Amwest cites numerous decisions from other jurisdictions holding that a surety's duty of good faith is a narrow one: to avoid fraudulent or dishonest conduct in performing or enforcing the contract. Amwest's reliance is not well founded, however, because those cases decided only an evidentiary question concerning the amount of liability, *see, e.g., Hartford Accident & Indemnity Co. v. Payne,* 242 F Supp 888 (DC Or 1965), or were based on contracts in which the language explicitly set a fraud standard. *See, e.g., Guarantee Co. of North America v. Pitts,* 78 Miss 837, 30 So 758, 759 (1901).

Management and the Wards respond that Amwest's obligation to exercise good faith would only be met by Amwest's use of due care in settling City's claim and in handling negotiations for settlement by treating conflicting interests of itself and Management and the Wards with impartiality, giving equal consideration to all interests. *See Eastham v. Oregon Auto Insurance,* 273 Or 600, 607, 540 P2d 364, *reh den* 273 Or 610 (1975); *Radcliffe v. Franklin Nat'l Ins. Co.,* 208 Or 1, 38, 298 P2d 1002 (1956).[1]

■ There is an implied obligation of good faith in the performance and enforcement of every contract. *Comini v.*

---

[1] *But see Maine Bonding v. Centennial Ins. Co.,* 298 Or 514, 693 P2d 1296 (1985) (applying a duty of due care under the circumstances and disapproving of the use of the terms "bad faith," and "good faith" in cases concerning the duty of a liability carrier).

*Union Oil Co.,* 277 Or 753, 756, 562 P2d 175 (1977); *Perkins v. Standard Oil Co.,* 235 Or 7, 16, 383 P2d 107 (1963). In *Best v. U. S. National Bank,* 303 Or 557, 562, 739 P2d 554 (1987), the court acknowledged that, "because the doctrine must be applied to the entire range of contracts, definitions of good faith tend to be either too abstract or applicable only to specific contexts," but noted that decisions as to what constitutes bad faith need not be standardless. The court explained that the purpose of the good faith doctrine is to prohibit improper behavior in the performance and enforcement of contracts and drew a line between good faith and bad faith by recourse to the reasonable contractual expectations of the parties. *See Best v. U. S. National Bank, supra.*

In *Best,* depositors alleged that the bank had exercised in bad faith its discretion to set fees for writing nonsufficient funds checks. The court held that summary judgment was improper, because there was a genuine issue of material fact whether the Bank set its NSF fees in accordance with the reasonable expectations of the parties. The court reasoned that,

> "[w]hen one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that that discretion will be exercised for particular purposes. If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith." *Best v. U. S. National Bank, supra,* 303 Or at 563.

The indemnity agreement between Amwest, Management and the Wards provides:

> "Surety shall have the right in its sole discretion to determine whether any claim shall be paid, compromised, defended, prosecuted or appealed."

Amwest argues that "sole discretion" is limited only by the duty not to act for dishonest purposes or improper motives. We conclude, however, that Amwest was bound by its implied covenant of good faith to exercise its discretion in compromising the claim so that the reasonable expectations of all the parties would be effectuated.

Parties to an indemnity agreement which subjects the right to compromise a claim against the principal to the

sole discretion of the surety must reasonably expect that compromise and payment will be made only after reasonable investigation of the claims, counterclaims and defenses asserted in the underlying action. In order to prove lack of good faith in settling the claim, Management and the Wards needed only to prove that Amwest failed to make a reasonable investigation of the validity of the claims against them or to consider reasonably the viability of their counterclaims and defenses, not that Amwest acted for dishonest purposes or improper motives. Therefore, the trial court did not err in refusing to give the requested instruction.

The motion for directed verdict requires us to review the sufficiency of the evidence to support the verdict. Because the jury reached a verdict, we may not set it aside unless there is no evidence from which the jury could have found the facts necessary to determine that Amwest failed to act in good faith or that City breached its contract with Management. *See Brown v. J.C. Penny Co.,* 297 Or 695, 705, 688 P2d 811 (1984). In determining whether there is evidence to support the verdict, we review the evidence in the light most favorable to the nonmoving party. *Hillstrom v. McDonald's Corp.,* 88 Or App 444, 448, 746 P2d 222 (1987). We conclude that there is evidence to support the verdict.

■ Management and the Wards introduced evidence from which the jury could find that Amwest failed to act in good faith. Management introduced a letter from Management to Amwest which set out Management's view that it was not in violation of its DEQ permit and that City had not acted reasonably under the contract. Amwest's attorney in charge of negotiations with City testified that he did not investigate whether Management was in violation of its DEQ permit or whether City had given proper notice of suspension of delivery under the contract. He testified that Amwest had not made an independent calculation of City's damages. He also testified that Amwest did not press in the negotiations the alleged failure of City to mitigate its damages or the value of Management's counterclaim for damages for lost profits on its fertilizer operation.

The jury could infer from that testimony that Amwest did not investigate the accuracy of the Wards' contentions that Management was not operating in violation of

the DEQ permit, that City gave inadequate notice, that City's damages were overstated, that City failed to mitigate its damages and that City unreasonably denied Management an extension of time in which to begin hauling again. From those facts the jury could conclude that, contrary to the expectations of the parties to the indemnity agreement, Amwest failed to make a good faith investigation before settling City's claim against Management.

■ Amwest also argues there was no evidence from which the jury could find that City breached its contract with Management or that City's damages were only $1.00. Management introduced testimony that City had demanded that performance begin simultaneously with the signing of the contract, although Management was unable to get full financing of its construction plans until the contract was signed. George Ward testified that City's lack of cooperation was the principal cause of Management's failure to perform. The emergency nature of the suspension of delivery of sludge, and therefore the sufficiency of City's notice to Management, was also disputed in the testimony. Management's expert testimony was that City had various options in undertaking Management's performance which would have cost less than the option which it chose.

The jury could infer that the City breached the contract by obstructing Management's performance, that it failed to mitigate its damages and that the proper award for Management's breach was nominal damages. The denial of the motion for directed verdict was not error.

■ Amwest's attorney objected to a statement made in Management's closing argument but acquiesed in the trial court's decision to remedy any prejudice by curative instructions to the jury. Amwest did not except at the time to those instructions or move for a mistrial, and so it may not now complain that it should have a new trial. *See Philpott v. Jordan,* 280 Or 803, 806 n 2, 572 P2d 1030 (1977).

■ Management and the Wards cross-appeal from the order of the trial court awarding attorney fees to Amwest and from the denial of their motion for attorney fees. Section 2 E of the indemnity agreement provides:

"Surety shall have the right to reimbursement of its

expenses, premiums and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this Agreement, Surety may recover its further expenses and attorneys' fees incurred in such suit."

ORS 20.096(1) mandates that a contractual provision which allows recovery of attorney fees to only one party to the contract be construed to allow a reciprocal allowance of fees to the other party if it prevails. Management contends that it is the prevailing party because the net judgment was entered for it, *Marquam Inv. Corp. v. Meyers,* 35 Or App 23, 581 P2d 545, *rev den* 284 Or 341 (1978), and that, therefore, the trial court erred by not awarding it attorney fees.

In *Stanfill v. TAT (USA) Corp.,* 76 Or App 332, 337, 709 P2d 717 (1985), *rev den* 300 Or 562 (1986), we stated that, to find that a party prevailed under ORS 20.096(1), the party in whose favor judgment was rendered must have prevailed on a contract containing an attorney fees provision. *See also Zidell v. Greenway Landing Dev. Co.,* 89 Or App 525 at 528 (1988). Management prevailed on the contract which did not provide for attorneys fees. It did not prevail on the indemnity agreement which provided fees and, therefore, cannot rely on ORS 20.096 to claim its attorney fees.

Amwest prevailed on the indemnity agreement, which provided attorney fees. The trial court did not err in awarding fees to Amwest because the indemnity agreement provided that Amwest could recover its fees in any suit on the agreement. The contract did not allow fees to Amwest only if it was the prevaling party in the action. No recourse is necessary to the ORS 20.096(5) definition of prevailing party, or to the reciprocity provision of ORS 20.096. Fees were properly awarded according to the language of the contract.

Affirmed on appeal and cross-appeal.