## CIRCUIT COURT OF FAIRFAX COUNTY

Transamerica Premier Ins. Co.

v.

Turf Specialists
of Northern Virginia,
Inc., et al.

February 18, 1993

Case No. (Law) 102032

BY JUDGE THOMAS J. MIDDLETON

This case came to be heard on plaintiff's Motion for Judgment seeking judgment against the defendants, Turf Specialists of Northern Virginia, Inc., and Daniel and Phyllis Carpenter, in the amount of $11,280.30 plus interest, costs, and attorney's fees pursuant to a General Indemnity Agreement. Upon consideration of the pleadings, applicable case law, the evidence before the court, and the arguments of counsel, the court finds for the defendants.

On March 30, 1987, Transamerica issued both a contract performance bond and a contract payment bond on behalf of Turf for the benefit of the North Carolina Department of Transportation ("Department"). These bonds were issued in connection with a contract between Turf and the Department under which Turf was to provide mowing services in North Carolina.

On September 2, 1987, Transamerica entered into a General Indemnity Agreement with Turf as the principal and with Daniel and Phyllis

Carpenter as the individual indemnitors. The Agreement was executed for the purpose of indemnifying Transamerica in connection with any bonds written on behalf of Turf. The Agreement provided, in part, as follows:

> 2. *Indemnity* The Undersigned agree to indemnify and save harmless the Surety from and against any and all demands, liabilities, loss, costs, damages or expenses of whatever nature or kind . . . .
>
> In furtherance of such indemnity:
>
> A. Surety shall have the right in its sole discretion to determine whether any claims shall be paid, compromised, defended, prosecuted or appealed . . . .
>
> D. In any claim or suit hereunder, an itemized statement of the aforesaid loss or expense, sworn to by an officer of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of the liability hereunder of the Undersigned.

Transamerica was subsequently given notice of a claim asserted by G. L. Turner Company against Turf for parts supplied in the amount of $11,280.30. Transamerica was also informed at this time that Turf had filed for relief under Chapter 11 of the Bankruptcy Code.

After several unsuccessful attempts to contact Turf in order to discern the validity of Turner's claim, Transamerica made payment to Turner in the amount of $11,280.30 and received a "Release and Assignment" in consideration of such payment. Transamerica now seeks reimbursement of the full amount from the Carpenters pursuant to the Indemnity Agreement.

Transamerica argues that it is entitled to indemnification from the Carpenters unless its payment to Turner was made through fraud or bad faith. Transamerica also relies heavily on the "prima facie evidence" language in Paragraph 2(D) of the Agreement as further support of its position.

It is the opinion of the Court that Transamerica is not entitled to be indemnified by the Carpenters for several reasons. First, Transamerica has failed to demonstrate that it made a reasonable investigation of Turner's claim prior to making payment. Thus, Transamerica failed to meet fully its obligation of good faith. Second, the Carpenters have effectively rebutted Transamerica's evidence as to the fact and extent

of their liability. Third, Transamerica has failed to show that the parts supplied by Turner to Turf had any connection whatsoever to the contract for which Transamerica had issued the payment and performance bonds.

When an express indemnification contract exists, a surety is entitled to stand upon the letter of his contract. *Fidelity and Deposit Co. of Maryland v. Bristol Steel*, 722 F.2d 1160, 1163 (4th Cir. 1983) (citing *Commercial Insurance Co. of Newark v. Pacific-Peru Const.*, 558 F.2d 948, 953 (9th Cir. 1977)). Accordingly, the rights of a surety are not to be determined by general "indemnity principles," but by the "letter of the contract" of indemnification. *Fidelity & Deposit*, 722 F.2d at 1163. Of course, an indemnitor is excused from its obligation to indemnify a surety if the surety makes a payment through fraud or lack of good faith. *U.S. for Use of I.B.E.W. v. United Pacific Ins.*, 697 F. Supp. 378, 381 (D. Idaho 1988) (citing *Fidelity & Deposit*, 722 F.2d at 1163). The indemnity agreement between Transamerica, Turf, and the Carpenters gave Transamerica the right to determine whether a claim should be paid in its "sole discretion." This Court has not been made aware of any case in Virginia where a surety's duty of good faith was discussed in the context of an indemnity agreement containing similar language. Courts outside of Virginia have, however, dealt with this issue. In *City of Portland v. G. D. Ward & Associates*, 750 P.2d 171 (Or. App. 1988), the court considered an indemnity agreement which provided, in part, as follows:

> Surety shall have the right in its sole discretion to determine whether any claim shall be paid, compromised, defended, prosecuted, or appealed.

The surety argued that its "sole discretion" was limited only by a duty not to act for dishonest purposes or improper motives. *Id.* at 175. The court, however, disagreed and found that the surety was bound "by its implied covenant of good faith to exercise its discretion . . . ." *Id.* The Court stated that parties to such an agreement must reasonably expect that compromise or payment will be made only after a reasonable investigation of the claims asserted. *Id.* Thus, the indemnitor needed only to prove that the surety failed to make a reasonable investigation of the validity of the claim against them in order to prove lack of good faith by the surety. *Id.; see also Rush Presbyterian St. Luke's v. Safeco Ins. Co.*, 712 F. Supp. 1344, 1346 (N.D. Ill. 1989) (where the court

stated that Illinois requires only a showing of negligence in actions alleging the breach of a surety's duty of good faith towards its insured).

Other courts have held that something more than a failure to make a reasonable investigation is necessary for a finding of bad faith. *See Ford v. Aetna Insurance Co.*, 394 S.W.2d 693 (Tex. Civ. App. 1965); and *Engbrock v. Federal Insurance Company*, 370 F.2d 784, 787 (5th Cir. 1967) (neither lack of diligence nor negligence is the equivalent of bad faith; improper motive is an essential element). The better reasoned approach, however, is to require the surety to put forth more than a minimal effort to ascertain the validity of a claim. The surety must reasonably investigate the claim to make sure the amount is properly due and to make sure, when appropriate, that the claim relates to a bond issued by the surety. The surety cannot be allowed to blindly make payment to a claimant and expect to be indemnified.

In the present case, Transamerica attempted to contact the defendants by letter on three different occasions: (1) letter to Turf dated 9/14/89; (2) letter to Turf's attorney, Mr. Walutes, dated 12/15/89; and (3) letter to the Carpenters dated 5/25/90. Transamerica apparently received no response to any of these letters. It appears that Transamerica undertook no independent investigation of the validity of Turner's claim other than the three letters mentioned above.

It is undisputed that Transamerica made payment on Turner's claim after becoming aware of Turf's petition for relief under Chapter 11 of the Bankruptcy Code. Yet, no evidence was presented that Transamerica made any inquiry into Turf's bankruptcy proceeding. It appears that further inquiry into this situation would have revealed that Turner's claim against Turf was for only $9,425.25, nearly $2,000 less than the amount Transamerica paid to Turner (see U.S. Bankruptcy Court Schedule A-3, defendant's exhibit 7). It also appears that further investigation by Transamerica would have revealed that over $5,800 worth of parts sold by Turner to Turf on open account were still in Turf's inventory at the time this suit was initiated.

In addition, correspondence between Transamerica and Robert A. Hall of G. L. Turner Company indicates that Transamerica had some doubt as to whether the parts supplied by Turner to Turf were used on the bonded project with the Department. One letter dated September 14, 1989, states as follows: "[W]e are unable to determine if the materials provided by your company were used on the bonded projects

. . . . [We] would appreciate your further review of your records for some indication that these items were used on the bonded project."

An additional letter from Transamerica to Mr. Carpenter on September 14, 1989, indicates that Transamerica was uncertain whether the parts supplied by Turner were ever used in connection with the contract with the Department. Despite all of the uncertainty, Transamerica paid off Turner's claim in full.

From the evidence it becomes clear that Transamerica failed to make a reasonable investigation of the claim asserted by Turner. At the very least, Transamerica should have made some inquiry into the bankruptcy proceeding to verify the amount of Turner's claim. Its failure to do so reflects something less than a good faith exercise of discretion. Transamerica's minimal efforts in this case fell short of this duty of "reasonable investigation." *Ward*, 750 P.2d 171.

Transamerica also relies heavily on paragraph 2(D) of the Agreement which provides that itemized statements or vouchers shall be prima facie evidence of the fact and extent of the indemnitor's liability. Transamerica presented vouchers at trial, and thereby made out a prima facie case of liability. Prima facie evidence, however, is not conclusive evidence of the propriety of Transamerica's payment to Turner. *See Transamerica Insurance Company v. Bloomfield*, 401 F.2d 357, 363 (6th Cir. 1968) (where the distinction between "prima facie" evidence and "conclusive" evidence was recognized by the court).

Since Transamerica's vouchers were only prima facie evidence, the defendants were entitled to put on rebuttal evidence. It is the opinion of the court that Transamerica's evidence was effectively rebutted by that of the defendants. The uncontroverted testimony of Turf's chief operating officer, Mr. Carpenter, was that $5,804.67 worth of the parts acquired by Turf from Turner on open account remained in Turf's inventory at the time the suit was initiated. Thus, only $5,475.63 ($11,280.30 minus $5,804.67) worth of parts relating to Turner's claim were ever used by Turf in any way. Mr. Carpenters' further uncontroverted testimony was that only seven of Turf's twenty-eight units were used in connection with Turf's contract with the Department.

In addition, there was no evidence presented by Transamerica that any of the parts purchased by Turf from Turner were used in connection with the bonded contract with the Department. To the contrary, the evidence presented by the defendants indicates the opposite. It is unclear, therefore, whether Turner's claim against Turf has any connec-

tion whatsoever to the bonded contract. It is equally unclear, then, whether Transamerica paid off a valid claim under the bond.

A review of the facts and evidence in this case clearly shows that Transamerica is not entitled to be reimbursed in full for the amount paid to Turner. Although it cannot be said that Turf and the Carpenters were wholly without fault in failing to respond to Transamerica's letters, Transamerica was still obligated to make a reasonable investigation of Turner's claim before making payment. Because Transamerica failed to make any independent investigation of the validity of Turner's claim, Transamerica cannot now recover the full amount paid from the Carpenters.

Accordingly, the court finds in favor of the defendants.