UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland Corporation, Plaintiff,

v.

STANLEY CONTRACTING, INC., an Oregon Corporation; James A. Stanley, an individual, Defendants.

Stanley Contracting, Inc., an Oregon Corporation; James A. Stanley, an individual, Counterclaim Plaintiff,

v.

City of Carlton, an Oregon Municipal Corporation, Counterclaim Defendant.

No. 03–796–KI.

United States District Court, D. Oregon.

Jan. 30, 2004.

Jan D. Sokol, Stewart Sokol & Gray, LLC, Portland, OR, for Plaintiff.

Joseph A. Yazbeck, Robert K. Lau, Yazbeck, Cloran & Hanson, LLC, Portland, OR, for Defendants.

## OPINION

KING, Judge:

Plaintiff United States Fidelity and Guaranty Company ("USFG") brings this action to enforce the terms of a Master Surety Agreement executed with defendants Stanley Contracting, Inc., and Jimmy A. Stanley (together, "Stanley"). Before the court is Plaintiff's Motion for Summary Judgment (# 22). USFG seeks summary judgment for money damages in the amount of its known loss arising from claims on the bonds. It also seeks specific enforcement of the indemnity agreement requiring Stanley to post collateral security in an unspecified amount sufficient to protect USFG from future losses arising from claims on the bonds. For the reasons below, I grant USFG's motion for summary judgment on both issues.

## FACTS

Stanley executed a master surety agreement ("Indemnity Agreement") on November 14, 1997, in favor of USFG. It provides:

> III (A) [Stanley] shall exonerate, hold harmless, indemnify and keep indemnified [USFG] from and against any and all demands, claims, liabilities, losses and expenses of whatsoever kind or nature (including but not limited to interest, court costs and counsel fees) imposed upon, sustained, or incurred by [USFG] by reason of: (1) [USFG] having executed, provided or procured BOND(S) in behalf of [Stanley], or (2) [Stanley]'s failure to perform or comply with any of the provisions of this AGREEMENT;
>
> (B) In order to exonerate, hold harmless, and indemnify [USFG], [Stanley] shall upon demand of [USFG], place [USFG] in funds before [USFG] makes any payment; such funds shall be, at [USFG]'s option, money or property, or liens or security interests in property.

(The amount of such money or property or the value of the property to become subject to liens or security interests, shall be determined by [USFG].)

. . .

> IV (A) The liability of [Stanley] hereunder shall extend to and include all amounts paid by [USFG] in good faith under the belief that: (1) [USFG] was or might be liable therefor; (2) such payments were necessary or advisable to protect any of [USFG]'s rights or to avoid or lessen [USFG]'s liability or alleged liability; . . . .

Fjellstad Aff. Ex. A.

On August 10, 2001, Stanley and the City of Carlton ("City") entered into a contract for the modification and expansion of the water treatment plant and related facilities ("Contract").

On August 10, 2001, USFG, as surety, and Stanley, as principal, posted payment and performance bonds ("Bonds") to the City, as obligee, in connection with the water system project. The payment bond states:

> NOW, THEREFORE, if [Stanley] shall promptly make payment to all persons, firms, and corporations furnishing materials for, or performing labor in the prosecution of the WORK provided for in such contract, . . . then this obligation shall be void, otherwise to remain in full force and effect.

Fjellstad Aff. Ex. B at 1. The performance bond has a similar provision.

The City terminated Stanley from the Contract in 2003, a decision which Stanley contends was wrongful. As of August 19, 2003, USFG settled claims against the Bonds for a total of $572,899.44, after reimbursements. It has incurred costs, expenses, and attorney fees on the Bonds in the amount of $33,903.72. USFG anticipates future claims of unknown size and

has posted a reserve of $40,461.07. Stanley has not reimbursed USFG nor posted collateral security, in spite of USFG's demands.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Robi v. Reed,* 173 F.3d 736, 739 (9th Cir.), *cert. denied,* 528 U.S. 952, 120 S.Ct. 375, 145 L.Ed.2d 293 (1999).

## DISCUSSION

I. *Appropriate Standard for USFG's Conduct*

█ USFG argues that it fully performed the Indemnity Agreement by executing Bonds on the Project and settling in good faith claims against the Bonds. USFG contends that Stanley breached the Indemnity Agreement by failing to indemnify USFG against losses on claims paid and by failing to post collateral security to protect USFG from future losses. Thus, it seeks damages in the amount paid on claims on the Bonds, plus costs, expenses, and attorney fees, for a total of $606,803.16. USFG also seeks specific performance of the collateral provision because it reasonably anticipates additional

substantial claims for which it has established a reserve.

Stanley notes that the Bonds provide that if Stanley performed all requirements of the Contract faithfully, the Bonds would not be in effect and no claims by the City would be honored. Stanley contends that it performed its obligations under the Contract until it was prevented from doing so by the City's wrongful termination. Thus, Stanley argues that USFG breached its agreement with Stanley by paying claims made against the Bonds. Stanley also contends that USFG did not act in good faith because it did not conduct a reasonable investigation into the claims and Stanley's defenses.

Stanley relies on *City of Portland v. George D. Ward & Associates,* 89 Or.App. 452, 750 P.2d 171 (1988). The City sued two companies with whom it had contracted to dispose of sludge from sewage treatment plants and a surety which had issued a performance bond. The surety sued the individuals for indemnity. The companies and individuals alleged that the surety breached its covenant of good faith in performance of its right to settle claims. The indemnity agreement gave the surety the right in its sole discretion[1] to determine how to handle a claim. In ruling on a requested jury instruction, the court held:

> Parties to an indemnity agreement which subjects the right to compromise a claim against the principal to the sole discretion of the surety must reasonably expect that compromise and payment will be made only after reasonable investigation of the claims, counterclaims and defenses asserted in the underlying action. In order to prove lack of good faith in settling the claim, [the companies and individuals] needed only to prove that [the surety] failed to make a

---

1. "Surety shall have the right in its sole discretion to determine whether any claim shall

be paid, compromised, defended, prosecuted or appealed." *Id.* at 457, 750 P.2d 171.

reasonable investigation of the validity of the claims against them or to consider reasonably the viability of their counterclaims and defenses, not that [the surety] acted for dishonest purposes or improper motives.

*Id.* at 457–58, 750 P.2d 171. In reaching this ruling, the court reviewed *Best v. U.S. National Bank*, 303 Or. 557, 562, 739 P.2d 554 (1987) (bank had discretion in setting fees for writing nonsufficient funds ("NSF") checks), in which the court reasoned that when a party to a contract is given discretion in some aspect of performance, the parties contemplate that the discretion will be exercised for particular purposes, and if it is exercised for purposes not contemplated by the parties, the discretion was exercised in bad faith. *Ward*, 89 Or.App. at 457, 750 P.2d 171.

USFG argues that the reasonable investigation standard in *Ward* is limited by *Uptown Heights Associates v. Seafirst Corporation*, 320 Or. 638, 891 P.2d 639 (1995), to situations in which one party has complete discretion in its performance of a contract term and the parties did not manifest their reasonable expectations about performance of the term. USFG contends that paragraph IV(A) of the Indemnity Agreement is the parties' expression of their reasonable expectations regarding USFG's good faith payment of claims. Thus, USFG contends that the reasonable investigation standard drops out, leaving a lack of bad motive as the standard for good faith.

In *Uptown*, a bank foreclosed on a building loan when the debtor had a sales agreement with a purchaser for an amount larger than the loan balance but needed some time for the purchaser to arrange financing. The court affirmed the dismissal of the claim for breach of the contractual duty of good faith for failure to state a claim. The court distinguished *Best* because the bank in *Best* had no agreement

with its depositors on how to set the NSF fees. In contrast, the loan agreement in *Uptown* provided foreclosure as a remedy for any default and was not limited to defaults that jeopardize the bank's security. Thus, the parties' reasonable expectation was expressed. *Id.* at 646–47, 891 P.2d 639. USFG draws an analogy to the definition of good faith in paragraph IV of the Indemnity Agreement.

I agree with USFG that the Indemnity Agreement does not bestow the unlimited discretion to settle claims that was at issue in *Ward*. Instead, the parties agreed to a provision in which USFG could settle claims for which it thought that it might be liable. Thus, whether the City wrongfully terminated Stanley from the contract is not relevant. It is undisputed that the City did terminate Stanley and made a claim against the bond. A lengthier investigation is not required under the terms of the Indemnity Agreement. The good faith term is fulfilled if there is no bad faith or wrongful motive on the part of USFG.

## II. *Evidence Concerning USFG's Good or Bad Faith*

Stanley moved under Rule 56(f) to delay this court's ruling on USFG's motion until Stanley can complete discovery concerning USFG's investigation. Stanley intended to seek documents from USFG, the City, and a subcontractor that the City required Stanley to use whose conduct Stanley believes to be a substantial factor in the circumstances causing this litigation. Stanley also intended to depose the engineer for the City concerning its termination of Stanley and Gary Judd of USFG concerning the company's good faith in payment of the claims.

In reply, USFG contended that it is irrelevant if Stanley defaulted or USFG was actually liable for claims because the Indemnity Agreement makes Stanley lia-

ble for payments on claims made in the good faith belief that USFG was, or might be, liable and which were necessary or advisable to protect USFG's rights or to avoid or lessen the company's liability or alleged liability. USFG argued that the standard of a good faith payment is lack of bad motive rather than performing a reasonable investigation. USFG also objected to a delay in ruling to allow discovery because Stanley did not list specific facts it hopes to discover but instead seeks to begin a "fishing expedition."

After oral argument, I allowed time for Stanley to discover evidence of bad faith on the part of USFG when paying the claims. The parties submitted evidence supporting the following facts.

Peter Fjellstad, Senior Bond Claim Specialist for USFG, was responsible for processing claims made against the Bonds and selecting a completion contractor.

On January 27, 2003, an attorney representing Jack's Overhead Door, Inc. ("Jack's"), sent a letter to Stanley and Carlton giving notice of a claim against the Bonds for $2,963. On March 20, Jack's sent a similar letter to USFG. On March 27, and again on May 14, USFG sent a letter to Stanley seeking its position on the claim within 15 days. The May 14 letter enclosed the Proof of Claim received from Jack's on May 13, which included a notarized Affidavit of Claim and copy of Stanley's purchase order. Stanley did not respond. USFG accepted the claim on May 28, notifying Jack's of its decision, and issued a check on June 10.

Triad Mechanical ("Triad") made a claim against the Bonds for $60,063.12[2] for its work as a subcontractor on the project. The subcontract required Triad to provide daily time cards of labor and equipment expenditures to Stanley's project superintendent. Triad failed to provide this daily

documentation. On March 5, 2003, Stanley wrote Fjellstad to dispute the claim and explained that Triad had failed to provide daily reports. Stanley intended to go over its records and meet with Triad to attempt to determine within a month the appropriate amount for payment. Fjellstad had USFG's consultant review the claim to confirm that Triad was owed the money. On April 1, Fjellstad accepted Triad's claim and prepared to release payment. On April 11, Stanley wrote Fjellstad, again disputing the Triad claim. Fjellstad responded that Stanley failed to provide USFG with the undisputed amount of the claim and offered to attempt to recover overpaid amounts if Stanley would provide documentation supporting its position. Stanley responded that it disputed the entire amount because Triad had not provided the daily reports, as required under the subcontract.

Stanley sent USFG correspondence detailing its position concerning the City's threatened termination of the contract. An e-mail on February 11, 2003, from Fjellstad to the consultant, indicated that Fjellstad was not yet sure if USFG would be obligated to complete the project or would be responsible to pay the subcontractors and suppliers of Stanley. USFG hired a consultant to investigate the situation. The investigation included reviewing the plans, specifications, job site, materials, subcontractors, suppliers, and information and documents available from Stanley. The City's engineer was also consulted.

Carlton's City Council informed Fjellstad that it would neither endorse nor veto USFG's choice of a company to finish the project, believing that USFG had the discretion to make the decision after accepting responsibility under the Bond to complete the project. USFG selected Triad as the completion contractor, after consider-

---

**2.** Later revised to $60,787.59.

ing Triad and Dan and Stan Orr as well as Stanley. Stanley provided a handwritten bid to complete the project for $80,000. Triad bid $295,000 to complete the project. Fjellstad investigated the large difference in bid amounts by hiring the consultant to review both bids. To perform the review, the consultant built a spreadsheet to review each itemized portion of work and to compare Stanley's original bid with its project completion bid. The consultant asked Stanley to itemize and increase the bid to approximately $130,000 to cover work that was not part of the bid. USFG decided that the Triad bid was reasonable to complete the work. Neither the Orrs nor Stanley could bond the project. Triad could obtain a bond. Triad had worked on part of the project and was familiar with it. USFG believed that Triad had a good reputation based on its consultant's investigation into Triad's background. USFG also considered that Stanley was arguing with the City about money owed or not owed and whether certain work was to be part of the contract. Stanley had also approached USFG for financial assistance, which USFG was not in a position to offer. Stanley was in default on payments to its subcontractors and suppliers.

### III. *Analysis of USFG's Good or Bad Faith*

██ I reasoned above that the good faith term is fulfilled if there is no bad faith or wrongful motive on the part of USFG. Based on the supplemented record provided by the parties after the additional discovery, I conclude that Stanley has failed to raise a factual issue that USFG acted with bad faith or for a wrongful motive when it paid claims made against the Bonds and further when it selected Triad as the completion contractor.

██ A reasonable jury would conclude that USFG paid claims in a good faith belief that it was liable under the Bonds.

USFG hired an independent consultant to assist it and sought Stanley's opinion on the individual claims. The fact that USFG accepted Jack's claim a day before the fifteen day deadline expired is not persuasive in light of the fact that Stanley had ignored the first request by USFG for its position. Likewise, its decision to pay the Triad claim after verifying that the money was owed, even though a possible contract defense existed, is not evidence of bad faith when the Indemnity Agreement allows it to pay claims for which it has a good faith belief that it might be liable.

Concerning the selection of a completion contractor, USFG's decision to only consider bondable contractors is a reasonable one. It was already at risk for a sizeable loss. Similarly, USFG's decision to consider the ongoing disputes between Stanley and the City is not indicative of bad faith. Instead, USFG appeared to be trying to locate a completion contractor who could finish the project in the quickest and least contentious fashion.

Thus, USFG has acted within the provisions of the Indemnity Agreement in fulfilling its obligations under the Bonds and Stanley is liable for the payments made. I grant summary judgment in favor of USFG for damages in the amount paid on claims on the Bonds, plus costs, expenses, and attorney fees, for a total of $606,803.16.

### IV. *Collateral Security*

USFG also seeks specific enforcement of the term in the Indemnity Agreement requiring Stanley to post collateral security in an amount sufficient to protect USFG from future losses arising from claims on the bonds.

(B) In order to exonerate, hold harmless, and indemnify [USFG], [Stanley] shall upon demand of [USFG], place [USFG] in funds before [USFG] makes

any payment; such funds shall be, at [USFG]'s option, money or property, or liens or security interests in property. (The amount of such money or property or the value of the property to become subject to liens or security interests, shall be determined by [USFG].)

Fjellstad Aff. Ex. A.

In September 2003, USFG had posted a reserve of $40,461.07. I do not know the current size of the reserve or have any information on the type of security that Stanley could provide. USFG is entitled to the security, however, and I grant its motion for summary judgment for specific enforcement of this term. I ask the parties to confer regarding the amount and type of security. If they are unable to reach agreement, USFG may file a motion seeking specific security.

## CONCLUSION

Plaintiff's Motion for Summary Judgment (# 22) is granted.